Todd C. Ringstad (State Bar No. 973045)
todd@ringstadlaw.com
Nanette D. Sanders (State Bar No. 120169)
nanette@ringstadlaw.com
**RINGSTAD & SANDERS LLP**
4910 Birch Street
Suite 120
Newport Beach, CA 92660
Telephone: 949-851-7450
Facsimile:  949-851-6926

General Bankruptcy Counsel for
Karen Sue Naylor, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>☒ ELITE AEROSPACE GROUP, INC., a Delaware corporation<br>☐ ELITE AVIATION PRODUCTS INC., a Delaware corporation<br>☐ ELITE ENGINEERING SERVICES INC., a Delaware corporation<br>☐ ELITE METAL MANUFACTURING INC., a Delaware corporation<br>☐ ZACH HALOPOFF INC., a California corporation<br>☐ All Debtors<br><br><div align=center>Debtors and<br>Debtors-in-Possession</div> | Case Nos. 8:21-BK-12231-TA<br>Jointly administered with Case Nos.<br>8:21-BK-12417-TA<br>8:21-BK-12418-TA<br>8:21-BK-12419-TA<br>8:21-BK-12420-TA<br><br>Chapter 7 Cases<br><br>**MOTION OF CHAPTER 7 TRUSTEE FOR AUTHORIZATION TO:<br>SELL PERSONAL PROPERTY CONSISTING OF RAW MATERIALS AND FINISHED GOODS FREE AND CLEAR OF LIENS SUBJECT TO OVERBIDS; DECLARATION OF CHAPTER 7 TRUSTEE KAREN SUE NAYLOR IN SUPPORT THEREOF**<br><br><u>Hearing:</u><br>Date:     June 28, 2022<br>Time:    10:30 a.m.<br>Place:    Courtroom 5B<br>            411 West Fourth Street<br>            Santa Ana, CA 92701<br>            Via  ZoomGov |

Karen Sue Naylor, in her capacity as Chapter 7 Trustee for the estate of Elite Aerospace Group, Inc. ("EAG") and its wholly-owned subsidiaries, Elite Aviation Products Inc., Elite Engineering Services Inc., Elite Metal Manufacturing Inc., and Zach Halopoff Inc. (collectively, the "Subsidiaries," and together with EAG, the "Debtors"), hereby files this motion (the "Motion"), pursuant to Local Bankruptcy Rule 9013-1(m)(1), for approval of sale procedures and the sale of certain raw materials, work in process and finished goods (the "Inventory"), free and clear of all liens including but not limited to the lien of Last Chance Funding, Inc., pursuant to 11 U.S.C. § 363(b)(1) and (f), as more particularly described herein.

Trustee further seeks a finding that the successful bidder is a purchaser in good faith pursuant to the provisions of 11 U.S.C. § 363(m) and entitled to the protections set forth therein, and, in the event of a successful prevailing overbid, authorizing the Trustee to reimburse Snowline Aerospace the sum of $12,000.00 for moving costs incurred by Snowline at the request of the Trustee and for the purpose of preserving the Inventory.

The Trustee further seeks approval of an Agreement with Last Chance Funding, Inc. ("LCF") which asserts a first priority lien in the Inventory, which Agreement provides terms for a sale to the successful purchaser free and clear of the lien of LCF.

This Motion is based upon the attached Memorandum of Points and Authorities and supporting Declaration of Karen Sue Naylor, the Court's records and files in this bankruptcy proceeding, and on such other and further matters as the Court may allow.

WHEREFORE, the Trustee respectfully requests an Order:

1.    Approving the Sale Procedures described herein;

2.    Approving the Sale of the Inventory to the successful and prevailing bidder free and clear of liens on the terms described herein;

3.    Finding that the Purchaser is purchasing in good faith and entitled to the protections of section 363(m);

4.    Approving the Agreement with LCF;

5.    Waiving the provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure to allow for an immediate closing of the sale following entry of an Order confirming

2

1    the Sale;

2        6.    For such other relief as the Court may deem just and proper.

3    Respectfully submitted,

4    DATED:  June 04, 2022          RINGSTAD & SANDERS LLP

5

6                         By: _____*/s/ Todd C. Ringstad*_____

7                            Todd C. Ringstad
                            General Bankruptcy Counsel for Karen Sue

8    Naylor, Chapter 7 Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

**A.    Case Background.**

On September 13, 2021, EAG filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. Four of EAG's wholly-owned subsidiaries, specifically, Elite Aviation Products Inc. ("EAP"), Elite Engineering Services Inc. ("EES"), Elite Metal Manufacturing Inc. ("EMM"), and Zach Halopoff, Inc.  ("ZHI," and, collectively with EAP, EES, and EMM, the "Subsidiaries"), commenced their own chapter 11 bankruptcy cases on October 5, 2021.  These cases are now jointly administered in accordance with the order of the Bankruptcy Court.  See Doc. 52.

**B.    The Debtor's Business.**

The Debtors were in the business of design, engineering, and manufacturing state of the art parts for aerospace uses including aircraft components.  On April 10, 2021, a fire broke out at the Debtors' former facility located at 1641 Reynolds, Irvine, California 92614 (the "Former Irvine Facility"), which caused significant damage to certain of the Debtors' equipment and machinery and impeded the Debtors' ability to continue business operations. As a result of the damage caused by the fire and the Debtors' lack of liquidity at the time, the Debtors were forced to cease business operations in May 2021.

The Debtors' property insurance carrier, Chubb Group of Insurance Companies ("Chubb"), funded the relocation of the equipment, machinery, and other goods that were salvaged from the Former Irvine Facility to a new leased facility located at 9 Studebaker, Irvine, California 92618 (the "Studebaker Facility"). Chubb has also funded the rent obligations due under EAG's lease for the Irvine Facility, which EAG entered into on or about July 15, 2021 that expires on July 31, 2022.

The Debtors also had certain equipment, raw materials, work in process and finished goods located at the Debtors' former leased premises located at 15773 Gateway Circle, Tustin, CA 92780 (the "Tustin Facility").

**C.** **Conversion of the Case and Appointment of the Trustee**

On March 11, 2022, an Order was entered converting the jointly administered cases to Chapter 7. See Doc. 284.  Karen Sue Naylor is the duly appointed and acting Chapter 7 Trustee (the "Trustee") of the Debtors' bankruptcy estate.

The Trustee learned that less than one week prior to the appointment of the Trustee, the Bankruptcy Court had granted immediate relief from the automatic stay to allow the Tustin Landlord to recover possession to the Tustin Facility which relief included permission for the Tustin Landlord to remove assets of the estate from the Tustin Facility and dispose of the same pursuant to applicable California law.  Among the assets at the Tustin Facility were certain raw materials consisting of aerospace-grade aluminum and titanium (the "Raw Materials"), and work in process/finished goods ("Finished Goods").  The Raw Materials and the Finished Goods are collectively referred to herein as the ("Inventory").  A complete list of the Raw Materials is attached hereto as Exhibit "A".  A complete list of the Finished Goods is attached hereto as Exhibit "B."  The Inventory is encumbered by a first priority lien in favor of Last Chance Funding, Inc. ("LCF").  The Trustee in informed and believes that the Inventory is owned by Elite Aerospace Group, Inc., ("EAG") as EAG is the only Debtor in these jointly administered cases to have scheduled raw materials, work in process and finished goods on their Schedule B.

As there were no liquid funds in the Estate when the Trustee was appointed, the Trustee had no ability to arrange for movers to move the Inventory from the Tustin Location to the Studebaker Location.  Snowline expressed interest in purchasing the Inventory and discussed with the Trustee a proposal to move the Inventory to the Studebaker Location to avoid the Inventory being disposed of by the Tustin Landlord.  The Trustee and Snowline negotiated terms for a purchase of the Inventory from the Trustee, free and clear of liens and subject to overbids from third parties.  The Trustee and Snowline agreed that Snowline would bear the moving costs and the costs to itemize the Inventory and those costs would be non-refundable except in the instance in which a successful overbidder became the purchaser, in which case, the minimum overbid increment would be sufficient to reimburse Snowline for the moving costs.  With an agreement on these terms, Snowline moved the Raw Materials to the Studebaker Location which

preserved for the Estate the value of these items and, due to concern over the availability of adequate space in the Studebaker facility, moved the Finished Goods to the location of Spearman Aerospace, 9215 Greenleaf Avenue, Santa Fe Springs, CA (the "Spearman Location").

The Trustee and Snowline have entered into a written agreement on the terms for the purchase of the Inventory by Snowline, subject to overbids (the "Snowline Agreement"). A true and correct copy of the Snowline Agreement is attached hereto as Exhibit "C."

**D.      The Proposed Sale of Inventory**

The Trustee has agreed to sell the Inventory to Snowline, or an overbidder, on the terms set forth in the Snowline Agreement and below:

1.      Snowline or its nominee agrees to purchase the Inventory for the minimum price of $225,000.00. The purchase is subject to overbids from third parties which must be made at least three business days prior to the hearing on Bankruptcy Court approval of the proposed sale and accompanied with a deposit as set forth below. In the event of overbids from one or more third parties, Snowline shall also be permitted to submit overbids, with the last and highest overbid being deemed the successful and prevailing bid. The Trustee shall request a minimum initial overbid increment of not less than $17,000.00 and subsequent bidding increments of not less than $5,000.00

2.      Snowline will pay an initial deposit of $22,500.00 to the Trustee within seven (7) business days of execution of this Term Sheet. The deposit will be held until confirmation of the sale and shall be refundable only in the event that (i) the sale is not approved by the Bankruptcy Court for reasons other than the withdrawal of Snowline from the sale; or (ii) Snowline is outbid by a competing bidder. The Trustee will request that all potential overbidders provide a minimum deposit of $22,500.00 to the Trustee at least three (3) business days prior to the hearing on the sale, with all such deposits non-refundable on similar terms.

3.      The obligation of Snowline to purchase the Inventory is subject to (i) entry of an Order of the Bankruptcy Court approving a sale of the Inventory to Snowline; (ii) a finding by the Bankruptcy Court that Snowline is a good faith purchaser entitled to the

protections of Section 363(m); and (iii) no order staying the sale has been entered by any Court prior to the closing.  Payment in full shall be due at the closing and the closing shall occur within five business days following entry of the order of the Bankruptcy Court approving the sale, unless an order has been entered staying the sale.

4.      In the event of a successful and prevailing overbid, the Trustee shall reimburse Snowline for its costs of moving the Inventory from the Tustin Location, to its current locations in an amount not to exceed $12,000.00, provided the Bankruptcy Court authorizes the Trustee to reimburse the moving costs.  The Trustee acknowledges that Snowline has presented costs in excess of $12,000.00 but has agreed to limit the reimbursement of costs to $12,000.00.  Payment of the moving costs shall be made following the closing of the sale to the successful bidder.  If Snowline is the successful and prevailing bidder it shall not be entitled to recover its moving costs, nor shall it be entitled to deduct the moving costs as a credit to the purchase price.

5.      Snowline will ensure that the Finished Goods are accessible for inspection by other parties interested in bidding during normal business hours at the Spearman Location and will not be moved from that location prior to the closing of the Sale.

6.      All payments shall be made by cashier's check unless otherwise agreed in advance by the Trustee.

7.      Snowline, or the successful and prevailing overbidder, will be required by the Order approving the Sale to completely remove the Inventory at the Debtor's facility at 9 Studebaker, Irvine, CA on or before July 25, 2022.

## II.

## PROPOSED OVERBIDDING STRUCTURE

The Trustee proposes and seeks approval of the following bidding procedures:

The initial bidding increment over the $225,000 purchase consideration would be a minimum of $17,000.00, for a total minimum initial overbid purchase price of $242,000.00. Thereafter bidding may proceed in minimum bidding increments of $5,000.00.

All potential overbidders must provide to the Trustee at least three business days before the Sale Hearing a minimum deposit of $22,500.00 in the form of a cashier's check, and a written and agreement to purchase the Inventory on the terms set forth in the agreement with Snowline attached and the terms set forth herein, and in the Court Order approving the Sale. The deposit of an overbidder will be held until confirmation of the sale and shall be refundable only in the event that the overbidder is not the prevailing bidder confirmed by the Court at the Sale Hearing.

All overbidders must provide all-cash bids. The obligation of a prevailing overbidder to purchase the Inventory is subject to (i) entry of an Order of the Bankruptcy Court approving a sale of the Inventory to the prevailing overbidder; (ii) a finding by the Bankruptcy Court that overbidder is a good faith purchaser entitled to the protections of Section 363(m); and (iii) no order staying the sale has been entered by any Court prior to the closing.

Payment in full shall be due at the closing and the closing shall occur within five business days following entry of the order of the Bankruptcy Court approving the sale, unless an order has been entered staying the sale.

## III.

## THE COURT MAY AUTHORIZE THE SALE OF THE ASSETS
## TO A GOOD FAITH PURCHASER

The Trustee, after notice and hearing, may sell property of the estate. Title 11 U.S.C. §363(b)(1). The Court's power to authorize the subject sale under section 363(b) of the Bankruptcy Code is to be exercised at its discretion. *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983).

The proponent of the sale must establish that there is a sound business purpose of the sale and that the sale is in the best interests of the estate, i.e. the sale is for a fair and reasonable price, that there is accurate and reasonable notice to creditors and that the sale is made in good faith. *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983); *In re Industrial Valley Refrig. & Air Cond.*

*Supplies, Inc.,* 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). The sale in this case satisfies the foregoing criteria.

### A.    <u>Sound Business Purpose</u>.

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (9th Cir. BAP 1988) has adopted a flexible, case by case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under section 363(b).  In *Walter*, the Ninth Circuit Bankruptcy Appellate Panel adopted the reasoning of the Fifth Circuit in *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986), wherein the Fifth Circuit Court of Appeals adopted the decision in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) for the proposition that the trustee must demonstrate a business justification for selling property.

In a proceeding under Chapter 7, the Trustee's primary duty under Title 11 U.S.C. §704(1) is to collect and reduce to money the property of the estate and to close the estate as expeditiously as is compatible with the best interests of the parties in interest.

Here the proposed sale of the Inventory is in the best interest of the Estate and its creditors, will eliminate the cost and risk of further storage of the Inventory, and will liquidate the Inventory for a fair price.  Accordingly, there is a sound business purpose for the sale since it is the Trustee's duty to reduce to money the property of the estate to the extent necessary to pay creditors' claims.

### B.    <u>Accurate and Reasonable Notice</u>.

It is expected that the notice of this Motion will satisfy the requirements for accurate and reasonable notice and will be appropriate under the circumstances.  The Trustee intends to serve the notice on all creditors and interested parties within the time period prescribed by the Local Bankruptcy Rules.

### C.    <u>Fair and Reasonable Price</u>.

The Trustee submits that the negotiated price for the Inventory represents a fair consideration, and that the allowance for overbidders and the terms for overbidding facilitate a competitive sale that is designed to elicit the highest and best price for the Inventory.

**D.** **Good Faith**.

The court, in *Wilde Horses Enterprises*, *supra*, set forth factors in considering whether a transaction is in good faith. The court stated:

> "Good Faith" encompasses fair value, and further speaks to the integrity of the transaction. Typical 'bad faith' or misconduct would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers . . . . And, with respect to making such determinations, the court and creditors must be provided with sufficient information to allow them to take a position on the proposed sale.

*Id*. at 842.

In this case, the proposed private sale represents the best price achievable in light of the exigent circumstances present in this case. The proposed sale is to an unrelated third party and will be an arm's-length transaction. The sale will be subject to overbids and the Trustee will make an effort to solicit interested overbidders. Accordingly, the Motion has been brought in good faith and the proposed sales price is fair and reasonable, based upon what the market will bear under these circumstances, and should be approved.

**IV.**

**THE PROPOSED SALE SHOULD BE ALLOWED**

**FREE AND CLEAR OF LIENS**

Bankruptcy Code Section 363(f) allows a debtor to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

1. Applicable non-bankruptcy law permits a sale of such property free and clear of such interest;

2. Such entity consents;

3. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4. Such interest is in bona fide dispute; or such entity could be compelled, in a legal or

equitable proceeding, to accept money satisfaction of such interest.

Bankruptcy Code Section 363(f).

Section 363(f) is written in the disjunctive and thus only one of the enumerated

conditions needs to be satisfied for Court approval to be appropriate.

As set forth hereinabove, Last Chance Funding, Inc. ("LCF") asserts a first priority

security interest in the personal property assets of the estate.  The Trustee is informed and

believes that no other creditor asserts a security interest in the Inventory.

Here, the Trustee seeks authority to sell the Inventory free and clear of liens based upon

section 363(f)(2), which provides that the property may be sold based upon the secured party's

consent.   The Trustee and LCF have entered into a written agreement (the "LCF Agreement")

providing a carve out for the Estate and a division of proceeds from the sale of the Property.

See Exhibit D attached hereto.  The LCF Agreement provides, in summary, as follows:

- The Trustee may proceed to sell the inventory to the proposed buyer on the agreed
  terms.
- LCF agrees that the Estate shall receive a carve out from LCF's lien as follows:  The
  first $150,000 of the Net Sale Proceeds shall be distributed to LCF.  The Estate will
  receive and retain 100% of the sale proceeds in excess of $150,000 up to $185,000.
  Net Sale Proceeds in excess of $185,000 will be split 50% to LCF and 50% to the
  Estate.
- "Net Sale Proceeds" means the gross sale proceeds less any obligation to
  reimburse Snowline for moving costs (which only occurs if the successful
  bidder is an overbidder other than Snowline).
- Upon closing of the sale in accordance with these terms, the lien of LCF shall be
  released in its entirety and the successful purchaser shall receive title free and clear
  of the lien of LCF.

The Trustee submits that these terms are fair and reasonable to the Estate, and requests

approval of the LCF Agreement as part of this Motion.

Based upon the consent of LCF, the Inventory may be sold to the buyer free and clear of

1    liens.  Accordingly, the Trustee submits that a sale free and clear under Section 363(f)(2) is

2    warranted.

3

4                                                **V.**

5                            **WAIVER OF FRBP RULE 6004(h)**

6            The Trustee requests that the Court authorize a waiver of the provisions of Rule 6004(h)

7    of the Federal Rules of Bankruptcy Procedure, which provides, "An order authorizing the use,

8    sale, or lease of property other than cash collateral is stayed  until the expiration of 14 days after

9    entry of the order, unless the court orders otherwise."

10           Here, as set forth in the Declaration of Karen Sue Naylor, Chapter 7 Trustee, attached

11   hereto, emergency circumstances exist that warrant waiver of the provisions of Rule 6004(h).

12   The Raw Materials are located at the Studebaker facility.  The lease of the Studebaker facility

13   expires on July 31, 2022.  It is therefore imperative that  the sale close immediately, allowing

14   the purchaser to arrange to complete the removal of the Raw Materials before the lease

15   expiration.

16                                               **VI.**

17                                       **CONCLUSION**

18           The Trustee respectfully requests that this Court enter an order as follows:

19           1.       Approving the Sale Procedures described herein;

20           2.       Approving the Sale of the Inventory to the successful and prevailing bidder free

21   and clear of liens on the terms described herein;

22           3.       Finding that the Purchaser is purchasing in good faith and entitled to the

23   protections of section 363(m);

24           4.       Approving the Agreement with LCF;

25           5.       Waiving the provisions of Rule 6004(h) of the Federal Rules of Bankruptcy

26   Procedure to allow for an immediate closing of the sale following entry of an Order confirming

27   the Sale;

28   //

                                                   12

6.        For such other relief as the Court may deem just and proper.


        Respectfully submitted,

DATED:  June 04, 2022              RINGSTAD & SANDERS LLP


                        By:_____/s/  Todd C. Ringstad_____
                                Todd C. Ringstad
                                General Bankruptcy Counsel for Karen Sue
                                Naylor, Chapter 7 Trustee

## DECLARATION OF KAREN SUE NAYLOR

I, Karen Sue Naylor, declare as follows:

1.      I am an adult over the age of eighteen years.  I am the duly appointed and acting Chapter 7 Trustee for this bankruptcy estate and the related entities.  Following my appointment, I have reviewed the docket in these cases, the Schedules and Statement of Affairs filed in these matters, numerous pleadings filed in these cases, and have conducted two sessions of an ongoing meeting pursuant to section 341(a) of the Bankruptcy Code.  The matters set forth herein are matters that as to which I have personal knowledge or have learned in my investigation of this case.  If called upon to do so, I could and would competently testify thereto.

**A.      Case Background.**

2.      On September 13, 2021, EAG filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. Four of EAG's wholly owned subsidiaries, specifically, Elite Aviation Products Inc. ("EAP"), Elite Engineering Services Inc. ("EES"), Elite Metal Manufacturing Inc. ("EMM"), and Zach Halopoff, Inc.  ("ZHI," and, collectively with EAP, EES, and EMM, the "Subsidiaries"), commenced their own chapter 11 bankruptcy cases on October 5, 2021.  These cases are now jointly administered in accordance with the order of the Bankruptcy Court.  See Doc. 52.

**B.      The Debtor's Business.**

3.      I am informed and believe that the Debtors were in the business of design, engineering, and manufacturing state of the art parts for aerospace uses including aircraft components.  On April 10, 2021, a fire broke out at the Debtors' former facility located at 1641 Reynolds, Irvine, California 92614 (the "Former Irvine Facility"), which caused significant damage to certain of the Debtors' equipment and machinery and impeded the Debtors' ability to continue business operations. As a result of the damage caused by the fire and the Debtors' lack of liquidity at the time, I am informed and believe that the Debtors were forced to cease business operations in May 2021.

4.      I am informed and believe that the Debtors' property insurance carrier, Chubb Group of Insurance Companies ("Chubb"), funded the relocation of the equipment, machinery,

and other goods that were salvaged from the Former Irvine Facility to a new leased facility located at 9 Studebaker, Irvine, California 92618 (the "Studebaker Facility"). Chubb has also funded the rent obligations due under EAG's lease for the Irvine Facility, which EAG entered into on or about July 15, 2021 and that expires on July 31, 2022.

5.    The Debtors also had certain equipment, raw materials, work in process and finished goods located at the Debtors' former leased premises located at 15773 Gateway Circle, Tustin, CA 92780 (the "Tustin Facility").

**C.    Conversion of the Case and Appointment of the Trustee**

6.    On March 11, 2022, an Order was entered converting the jointly administered cases to Chapter 7. See Doc. 284.  I am the duly appointed and acting Chapter 7 Trustee (the "Trustee") of the Debtors' bankruptcy estates.

7.    Shortly after my appointment, I learned that less than one week prior to my appointment, the Bankruptcy Court had granted immediate relief from the automatic stay to allow the Tustin Landlord to recover possession to the Tustin Facility which relief included permission for the Tustin Landlord to remove assets of the estate from the Tustin Facility and dispose of the same pursuant to applicable California law.  Among the assets at the Tustin Facility were certain raw materials consisting of aerospace-grade aluminum and titanium (the "Raw Materials"), and work in process/finished goods ("Finished Goods").  The Raw Materials and the Finished Goods are collectively referred to herein as the ("Inventory").  A true and correct copy of a complete list of the Raw Materials is attached hereto as Exhibit "A".  A true and correct copy of a complete list of the Finished Goods is attached hereto as Exhibit "B."  I am informed and believe that the Inventory is encumbered by a first priority lien in favor of Last Chance Funding, Inc. ("LCF").  I am informed and believes that the Inventory is owned by Elite Aerospace Group, Inc., ("EAG") as EAG is the only Debtor in these jointly administered cases to have scheduled raw materials, work in process and finished goods on their Schedule B.

8.    As there were no liquid funds in the Estate when I was appointed, I had no ability to arrange for movers to move the Inventory from the Tustin Location to the Studebaker Location, which created an immediate threat of the loss of these valuable assets to the Tustin

landlord.  Snowline expressed interest in purchasing the Inventory and discussed with me a proposal to move the Inventory to the Studebaker Location to avoid the Inventory being disposed of by the Tustin Landlord.  I have negotiated terms for a purchase of the Inventory by Snowline, free and clear of liens and subject to overbids from third parties.  Snowline and I agreed that Snowline would bear the moving costs and the costs to itemize the Inventory and those costs would be non-refundable except in the instance in which a successful overbidder became the purchaser, in which case, the minimum overbid increment would be sufficient to reimburse Snowline for the moving costs.  With an agreement on these terms, Snowline moved the Raw Materials to the Studebaker Location which preserved for the Estate the value of these items and, due to concern over the availability of adequate space in the Studebaker facility, moved the Finished Goods to the location of Spearman Aerospace, 9215 Greenleaf Avenue, Santa Fe Springs, CA (the "Spearman Location").

9.      I have entered into a written agreement with Snowline on the terms for the purchase of the Inventory by Snowline, subject to overbids (the "Snowline Agreement").  A true and correct copy of the Snowline Agreement is attached hereto as Exhibit "C."

**D.      The Proposed Sale of Inventory**

10.      I have agreed to sell the Inventory to Snowline, or an overbidder, on the terms set forth in the Snowline Agreement and below:

A.      Snowline or its nominee agrees to purchase the Inventory for the minimum price of $225,000.00.  The purchase is subject to overbids from third parties which must be made at least three business days prior to the hearing on Bankruptcy Court approval of the proposed sale and accompanied with a deposit as set forth below.  In the event of overbids from one or more third parties, Snowline shall also be permitted to submit overbids, with the last and highest overbid being deemed the successful and prevailing bid.  I intend to request a minimum initial overbid increment of not less than $17,000.00 and subsequent bidding increments of not less than $5,000.00

B.      Snowline will pay an initial deposit of $22,500.00 to me, on behalf of the bankruptcy estate within seven (7) business days of execution of this Term Sheet.  The

deposit will be held until confirmation of the sale and shall be refundable only in the event that (i) the sale is not approved by the Bankruptcy Court for reasons other than the withdrawal of Snowline from the sale; or (ii) Snowline is outbid by a competing bidder. I also request that all potential overbidders provide a minimum deposit of $22,500.00 to me at least three (3) business days prior to the hearing on the sale, with all such deposits non-refundable on similar terms.

C.     The obligation of Snowline to purchase the Inventory is subject to (i) entry of an Order of the Bankruptcy Court approving a sale of the Inventory to Snowline; (ii) a finding by the Bankruptcy Court that Snowline is a good faith purchaser entitled to the protections of Section 363(m); and (iii) no order staying the sale has been entered by any Court prior to the closing. Payment in full shall be due at the closing and the closing shall occur within five business days following entry of the order of the Bankruptcy Court approving the sale unless an order has been entered staying the sale.

D.     In the event of a successful and prevailing overbid, the Trustee shall reimburse Snowline for its costs of moving the Inventory from the Tustin Location, to its current locations in an amount not to exceed $12,000.00, provided the Bankruptcy Court authorizes me to reimburse the moving costs. Snowline has presented me with a list of costs in excess of $12,000.00 but has agreed to limit the reimbursement of costs to $12,000.00. Payment of the moving costs shall be made following the closing of the sale to the successful bidder. If Snowline is the successful and prevailing bidder it shall not be entitled to recover its moving costs, nor shall it be entitled to deduct the moving costs as a credit to the purchase price.

E.     Snowline will ensure that the Finished Goods are accessible for inspection by other parties interested in bidding during normal business hours at the Spearman Location and will not be moved from that location prior to the closing of the Sale.

F.     All payments shall be made by cashier's check unless otherwise agreed by me in advance.

G.     Snowline, or the successful and prevailing overbidder, will be required by

17

1    the Order approving the Sale to completely remove the Inventory at the Debtor's facility

2    at 9 Studebaker, Irvine, CA on or before July 25, 2022.

3  **E.    Proposed Overbidding Structure**

4        12.    I seek approval of the following bidding procedures:

5            A.  The initial bidding increment over the $225,000 purchase consideration would

6    be a minimum of $17,000.00, for a total minimum initial overbid purchase price of

7    $242,000.00.  Thereafter bidding may proceed in minimum bidding increments of

8    $5,000.00.

9            B.  All potential overbidders must provide me at least three business days before

10   the Sale Hearing a minimum deposit of $22,500.00 in the form of a cashier's check, and a

11   written agreement to purchase the Inventory on the terms set forth in the agreement with

12   Snowline attached and the terms set forth herein, and in the Court Order approving the

13   Sale.  The deposit of an overbidder will be held until confirmation of the sale and shall be

14   refundable only in the event that the overbidder is not the prevailing bidder confirmed by

15   the Court at the Sale Hearing.

16           C.  All overbidders must provide all-cash bids.  The obligation of a prevailing

17   overbidder to purchase the Inventory is subject to (i) entry of an Order of the Bankruptcy

18   Court approving a sale of the Inventory to the prevailing overbidder; (ii) a finding by the

19   Bankruptcy Court that overbidder is a good faith purchaser entitled to the protections of

20   Section 363(m); and (iii) no order staying the sale has been entered by any Court prior to

21   the closing.

22           D.  Payment in full shall be due at the closing and the closing shall occur within

23   five business days following entry of the order of the Bankruptcy Court approving the

24   sale, unless an order has been entered staying the sale.

25  **F.    Sale Free and Clear of Liens**

26       13.    As set forth hereinabove, Last Chance Funding, Inc. ("LCF") asserts a first

27   priority security interest in the personal property assets of the estate.  I am informed and believe

28   that no other creditor asserts a security interest in the Inventory.

14.     Here, I seek authority to sell the Inventory free and clear of liens based upon section 363(f)(2), which provides that the property may be sold based upon the secured party's consent.   I have entered into a written agreement with LCF (the "LCF Agreement"), a true and correct copy of which is attached hereto as Exhibit "D," which provides a carve out for the Estate and a division of proceeds from the sale of the Property.  The LCF Agreement provides, in summary, as follows:

- The Trustee may proceed to sell the inventory to the proposed buyer on the agreed terms.

- LCF agrees that the Estate shall receive a carve out from LCF's lien as follows:  The first $150,000 of the Net Sale Proceeds shall be distributed to LCF.  The Estate will receive and retain 100% of the sale proceeds in excess of $150,000 up to $185,000. Net Sale Proceeds in excess of $185,000 will be split 50% to LCF and 50% to the Estate.

- "Net Sale Proceeds" means the gross sale proceeds less any obligation to reimburse Snowline for moving costs (which only occurs if the successful bidder is an overbidder other than Snowline).

- Upon closing of the sale in accordance with these terms, the lien of LCF shall be released in its entirety and the successful purchaser shall receive title free and clear of the lien of LCF.

15.     I believe and submit that these terms are fair and reasonable to the Estate, and request approval of the LCF Agreement as part of this Motion.

16.     Based upon the consent of LCF, the Inventory may be sold to the buyer free and clear of liens.  Accordingly, I would submit that a sale free and clear under Section 363(f)(2) is warranted.

## G.    Waiver of FRBP Rule 6004(h)

17.     I request that the Court authorize a waiver of the provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, which provides, "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry

of the order, unless the court orders otherwise."

18.    Emergency circumstances exist that warrant waiver of the provisions of Rule 6004(h).  The Raw Materials are located at the Studebaker facility.  The lease of the Studebaker facility expires on July 31, 2022.  It is therefore imperative that the sale close immediately, allowing the purchaser to arrange to complete the removal of the Raw Materials before the lease expiration.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 4th day of June 2022, at Newport Beach, California.

Karen Sue Naylor

## Total Weight in Pounds    223702.91

| Material | Vendor | Heat Lot | Height | Width | Length | Volume | lbs / Pc | Qty Pieces | Total lbs | Customer PN |
|---|---|---|---|---|---|---|---|---|---|---|
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 73895984 | 3.0 | 5.0 | 24.5 | 367.50 | 37.77 | 30 | 1133.1 | 113A4512-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Constell | 9465681 | 3.0 | 5.0 | 24.5 | 367.50 | 37.77 | 30 | 1133.1 | 113A4512-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 414614 | 4.0 | 5.0 | 26.8 | 535.00 | 53.97 | 30 | 1619.0 | 113A4512-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 727654B6 | 3.0 | 5.0 | 24.4 | 365.63 | 37.57 | 18 | 676.3 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 337241 | 4.0 | 5.0 | 26.3 | 525.00 | 53.97 | 30 | 1619.0 | 113A4512-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Constell | 93463527 | 3.0 | 5.0 | 22.7 | 339.75 | 34.88 | 30 | 1046.4 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | unknown | 436423 | 1.5 | 2.5 | 13.0 | 48.75 | 5.03 | 70 | 352.1 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | unknown | 33290589 | 3.0 | 5.0 | 24.5 | 367.50 | 37.77 | 12 | 453.2 | 113A4512-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | unknown | 32939187 | 2.5 | 10.5 | 15.0 | 393.75 | 40.57 | 4 | 162.3 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | unknown | 73090382 | 2.8 | 5.0 | 95.0 | 1306.25 | 139.1 | 12 | 1669.2 | 113A4611-903 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | unknown | 756122 | 4.0 | 4.0 | 18.0 | 288.00 | 29.67 | 46 | 1364.8 | 113A4612-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 73051281 | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 32 | 1115.8 | 113A4312-801 |
| Parker Bent Tube Material (aluminum) | unknown | unknown | 7.0 | 7.0 | 8.0 | 392.00 | 39.98 | 32 | 1279.4 | Parker Bent Tube |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 433934 | 4.0 | 5.0 | 24.0 | 480.00 | 49.33 | 30 | 1479.9 | 113A4112-829 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 34617583 | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 28 | 1206.0 | 113A220-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | BC63536 | 4.0 | 4.0 | 18.0 | 288.00 | 29.67 | 64 | 1898.9 | 113A4612-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 419542 | 4.0 | 4.0 | 18.0 | 288.00 | 29.67 | 64 | 1898.9 | 113A4612-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 730959B4 | 3.0 | 5.0 | 22.0 | 330.00 | 33.93 | 30 | 1017.9 | 113A4112-805 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 730959B5 | 3.0 | 5.0 | 22.0 | 330.00 | 33.93 | 30 | 1017.9 | 113A4112-805 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 419542 | 4.0 | 5.0 | 26.5 | 530.00 | 53.97 | 60 | 3238.2 | 113A4512-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9463521 | 3.0 | 5.0 | 22.0 | 330.00 | 33.93 | 30 | 1017.9 | 113A4112-805 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 73065285 | 3.0 | 5.0 | 23.5 | 352.50 | 36.23 | 30 | 1086.9 | 113A4512-806 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 727647BO | 3.0 | 5.0 | 24.4 | 365.63 | 37.57 | 30 | 1127.1 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 354012 | 3.3 | 5.0 | 22.0 | 357.50 | 36.73 | 30 | 1101.9 | 113A4112-831 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9468457 | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 30 | 1046.1 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 354142 | 3.3 | 5.0 | 22.0 | 357.50 | 36.73 | 30 | 1101.9 | 113A4112-831 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 354012 | 2.5 | 10.0 | 15.0 | 375.00 | 40.37 | 5 | 201.9 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9463584 | 3.0 | 5.0 | 24.5 | 367.50 | 37.77 | 32 | 1208.6 | 113A4512-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 33832780 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 60 | 2422.2 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 337811 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 60 | 2422.2 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 34635082 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 60 | 2422.2 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 34635082 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 60 | 2422.2 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 727649B6 | 3.0 | 5.0 | 23.5 | 352.50 | 36.23 | 90 | 3260.7 | 113A4512-806 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 33186185 | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 18 | 627.7 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 728720B4 | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 6 | 258.4 | 113A220-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 32836483 | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 30 | 1292.1 | 113A4220-901 |
| 6061-T651 Plate | | 375851B3 | 1.0 | 14.2 | 20.1 | 285.78 | 29.15 | 10 | 291.5 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9468457 | 3.0 | 5.0 | 24.4 | 365.63 | 37.57 | 30 | 1127.1 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 6536901 | 4.0 | 4.0 | 18.0 | 288.00 | 29.67 | 64 | 1898.9 | 113A4612-801 |
| TI-6AL-4V AMS-STD-2154, Ty1 | | 4500008567 | 5.1 | 4.8 | 109.5 | 2665.64 | 438 | 8 | 3504.0 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 338364B3 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 15 | 605.6 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 439651 | 4.0 | 5.0 | 24.0 | 480.00 | 49.33 | 15 | 740.0 | 113A4112-829 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 419542 | 4.0 | 5.0 | 24.0 | 480.00 | 49.33 | 30 | 1479.9 | 113A4112-829 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 728174B4 | 3.0 | 5.0 | 24.5 | 367.50 | 37.77 | 18 | 679.9 | 113A4512-801 |

| Material | Vendor | Heat Lot | Height | Width | Length | Volume | lbs / Pc | Qty Pieces | Total lbs | Customer PN |
|---|---|---|---|---|---|---|---|---|---|---|
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 353981 | 3.3 | 5.0 | 22.0 | 357.50 | 36.73 | 45 | 1652.9 | 113A4112-831 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 8468123 | 3.0 | 5.0 | 32.6 | 489.38 | 34.87 | 30 | 1046.1 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9468123 | 3.0 | 5.0 | 24.5 | 367.50 | 37.77 | 30 | 1133.1 | 113A4512-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 30 | 1292.1 | 113A220-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 434026 | 4.0 | 5.0 | 24.0 | 480.00 | 49.37 | 30 | 1481.1 | 113A4312-829 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 34296689 | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 30 | 1046.1 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 33800582 | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 30 | 1292.1 | 113A220-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 35030687 | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 30 | 1292.1 | 113A220-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 692391 | 4.0 | 5.0 | 24.0 | 480.00 | 49.33 | 9 | 444.0 | 113A4112-829 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 3.0 | 5.0 | 24.5 | 367.50 | 37.77 | 30 | 1133.1 | 113A4512-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9468123 | 3.0 | 5.0 | 24.4 | 365.63 | 37.57 | 60 | 2254.2 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 354012 | 3.3 | 5.0 | 22.0 | 357.50 | 36.73 | 12 | 440.8 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9468120 | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 30 | 1046.1 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 3.0 | 5.0 | 24.5 | 367.50 | 37.77 | 30 | 1133.1 | 113A4512-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 33177783 | 3.0 | 5.0 | 23.5 | 352.50 | 36.23 | 13 | 471.0 | 113A4312-806 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 32939187 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 18 | 726.7 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 329391b7 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 6 | 242.2 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9463527 | 3.0 | 5.0 | 22.6 | 339.38 | 34.88 | 30 | 1046.4 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 328252 | 3.3 | 5.0 | 22.0 | 357.50 | 36.73 | 30 | 1101.9 | 113A4112-831 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 5.0 | 4.0 | 26.3 | 525.00 | 53.97 | 30 | 1619.1 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 729700085 | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 15 | 646.1 | 113A220-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 33792485 | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 12 | 516.8 | 113A220-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 331777b3 | 3.0 | 5.0 | 23.5 | 352.50 | 36.23 | 48 | 1739.0 | 113A4312-806 |
| 7050-T7451 Plate | | | 5.0 | 16.0 | 21.5 | 1720.00 | 175.44 | 4 | 701.8 | airbus |
| 6061 T651 | | 70248584 | 2.3 | 4.8 | 6.6 | 71.28 | 7.27 | 17 | 123.6 | airbus |
| 6062 T651 | | | 16.3 | 8.0 | 2.5 | 325.00 | 33.15 | 12 | 397.8 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | | 2.8 | 5.0 | 95.0 | 1306.25 | 134.125 | 186 | 24947.3 | 113A4611-903 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9468121 | 3.0 | 5.0 | 23.5 | 352.50 | 36.23 | 60 | 2173.8 | 113A4312-806 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9463584 | 3.0 | 5.0 | 24.5 | 367.50 | 37.77 | 32 | 1208.6 | 113A4512-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9463584 | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 30 | 1046.1 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9463584 | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 30 | 1046.1 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9463584 | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 30 | 1046.1 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 72819080 | 3.0 | 5.0 | 23.5 | 352.50 | 36.23 | 27 | 978.2 | 113A4312-806 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 863515 | 4.0 | 4.0 | 18.0 | 288.00 | 29.67 | 60 | 1780.2 | 113A4612-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 863515 | 2.5 | 10.5 | 15.0 | 393.75 | 40.16 | 122 | 4891.9 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 4.0 | 4.0 | 18.0 | 288.00 | 29.67 | 60 | 1780.2 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 60 | 2422.2 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 60 | 2422.2 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 8890520 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 60 | 2422.2 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 404432 | 4.0 | 4.0 | 18.0 | 288.00 | 29.67 | 120 | 3560.4 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 1.5 | 2.5 | 13.0 | 48.75 | 5.03 | 211 | 1061.3 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 120 | 4844.4 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 120 | 4844.4 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 728253B6 | 3.0 | 5.0 | 22.0 | 330.00 | 33.93 | 30 | 1017.9 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9463584 | 3.0 | 5.0 | 24.4 | 365.63 | 37.57 | 30 | 1127.1 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 120 | 4844.4 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 120 | 4844.4 | |

| Material | Vendor | Heat Lot | Height | Width | Length | Volume | lbs / Pc | Qty Pieces | Total lbs | Customer PN |
|---|---|---|---|---|---|---|---|---|---|---|
| 7050-T7451 Airbus Blocks | | | 5.0 | 21.5 | 16.0 | 1720.00 | 175.44 | 7 | 1228.1 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9465653 | 3.3 | 5.0 | 22.0 | 357.50 | 36.47 | 60 | 2188.2 | 113A4112-831 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9465653 | 3.0 | 5.0 | 22.0 | 330.00 | 33.66 | 30 | 1009.8 | 113A4112-805 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9465653 | 3.0 | 5.0 | 22.0 | 330.00 | 33.66 | 17 | 572.2 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 332997B6 | 3.3 | 5.0 | 22.0 | 357.50 | 36.73 | 24 | 881.5 | 113A4112-831 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 34560081 | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 30 | 1292.1 | 113A220-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 34560081 | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 30 | 1292.1 | 113A220-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 14 | 488.2 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | | 4.0 | 5.0 | 22.6 | 452.50 | 53.97 | 60 | 3238.2 | 113A4312-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 331777B3 | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 12 | 418.4 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 9446011 | 3.3 | 5.0 | 22.0 | 357.50 | 36.73 | 34 | 1248.8 | 113A4112-831 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 8895930 | 2.8 | 5.0 | 95.0 | 1306.25 | 134.13 | 56 | 7511.3 | 113A4611-903 |
| 7075 Aluminum Plate | | | 144.0 | 1.5 | 10.0 | 2160.00 | 220.32 | 6 | 1211.8 | |
| 7076 Aluminum Plate | | | 144.0 | 4.0 | 1.5 | 864.00 | 88.128 | 2 | 176.3 | |
| 7077 Aluminum Plate | | | 144.0 | 4.0 | 4.0 | 2304.00 | 235 | 1 | 235.0 | |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 730959B4 | 3.0 | 5.0 | 23.5 | 352.50 | 36.23 | 72 | 2608.6 | 113A4312-806 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 730959B4 | 3.0 | 5.0 | 24.4 | 365.63 | 37.57 | 72 | 2705.0 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | | 327774B6 | 3.0 | 5.0 | 24.4 | 365.63 | 37.57 | 60 | 2254.2 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 72818081 | 3.0 | 5.0 | 24.4 | 365.63 | 37.57 | 18 | 676.3 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Constell | 9464847 | 3.0 | 5.0 | 22.6 | 339.38 | 34.87 | 30 | 1046.1 | 113A4312-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | | 3.0 | 5.0 | 24.4 | 365.63 | 37.52 | 30 | 1125.6 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 308962 | 4.0 | 5.0 | 24.0 | 480.00 | 49.33 | 33 | 1627.9 | 113A4112-829 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 741181 | 4.0 | 4.0 | 18.0 | 288.00 | 29.67 | 60 | 1780.2 | 113A4612-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 758732 | 3.3 | 5.0 | 22.0 | 357.50 | 36.73 | 12 | 440.8 | 113A4112-831 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Constell | 9465681 | 3.0 | 5.0 | 22.0 | 330.00 | 33.93 | 30 | 1017.9 | 113A4112-805 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 434026 | 4.0 | 5.0 | 26.3 | 525.00 | 53.97 | 30 | 1619.1 | 113A4512-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 33157484 | 3.0 | 5.0 | 22.0 | 330.00 | 33.93 | 16 | 542.9 | 113A4112-805 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 308961 | 4.0 | 4.0 | 18.0 | 288.00 | 29.67 | 18 | 534.1 | 113A4612-801 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Aleris | 863515 | 4.0 | 5.0 | 24.0 | 480.00 | 49.33 | 30 | 1479.9 | 113A4112-829 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 73065285 | 3.0 | 5.0 | 23.5 | 352.50 | 36.23 | 30 | 1086.9 | 113A4312-806 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 308462 | 4.0 | 5.0 | 26.3 | 525.00 | 53.97 | 25 | 1349.3 | 113A4512-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Constell | 9468457 | 3.0 | 5.0 | 22.0 | 330.00 | 33.93 | 25 | 848.3 | 113A4112-805 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Constell | 9468123 | 3.0 | 5.0 | 22.0 | 330.00 | 33.93 | 25 | 848.3 | 113A4112-805 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Arconic | 434032 | 4.0 | 5.0 | 24.0 | 480.00 | 49.33 | 30 | 1479.9 | 113A4112-829 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 338005B2 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 60 | 2422.2 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Constell | 9466767 | 3.0 | 5.0 | 23.5 | 352.50 | 36.23 | 60 | 2173.8 | 113A4312-806 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 346350B2 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 59 | 2381.8 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 72764780 | 3.0 | 5.0 | 22.0 | 330.00 | 33.66 | 16 | 538.6 | 113A4112-805 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 72679089 | 2.5 | 10.5 | 16.0 | 420.00 | 43.07 | 36 | 1550.5 | 113A220-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 34617583 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 60 | 2422.2 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 32939784 | 2.5 | 10.5 | 15.0 | 393.75 | 40.37 | 48 | 1937.8 | 113A4520-901 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 7276780 | 3.0 | 5.0 | 24.4 | 365.63 | 37.57 | 28 | 1052.0 | 113A4412-803 |
| 7050-T7451 BMS 7-323 Type 1 / BSS7055 CLA | Kaisar | 331777B3 | 3.0 | 5.0 | 24.5 | 367.50 | 37.77 | 30 | 1133.1 | 113A4512-801 |
| 7075-T73511 - Channel Stock | | C84539 | 1.0 | 2.0 | 3.0 | 6.00 | 0.612 | 186 | 113.8 | Channels |
| 7075-T73511 - Channel Stock | | C84539 | 1.0 | 2.0 | 3.0 | 6.00 | 0.612 | 71 | 43.5 | Channels |
| 7075-T73511 - Channel Stock | | C857961 | 1.0 | 2.0 | 3.0 | 6.00 | 0.612 | 109 | 66.7 | Channels |
| 7075-T73511 - Channel Stock | | C845359 | 1.0 | 2.0 | 3.0 | 6.00 | 0.612 | 241 | 147.5 | Channels |

| Material | Vendor | Heat Lot | Height | Width | Length | Volume | lbs / Pc | Qty Pieces | Total lbs | Customer PN |
|---|---|---|---|---|---|---|---|---|---|---|
| 7075-T73511 - Channel Stock | | C857961 | 1.0 | 2.0 | 3.0 | 6.00 | 0.612 | 70 | 42.8 | Channels |
| 7075-T73511 - Channel Stock | | C857961 | 1.0 | 3.0 | 3.0 | 9.00 | 0.918 | 70 | 64.3 | Channels |
| 7075-T73511 - Channel Stock | | C816434 | 1.0 | 3.0 | 3.0 | 9.00 | 0.918 | 70 | 64.3 | Channels |
| 7075-T73511 - Channel Stock | | | 1.0 | 2.0 | 3.0 | 6.00 | 0.612 | 700 | 428.4 | 10 pallets of Channels |

**Inventory Finished Goods**

| COMPONENT # | Description | QTY | COMPONENT # | Description | QTY |
|---|---|---|---|---|---|
| | #1 DRAG RED CSU KIT | | | #12 DRAG RED CSU KIT | |
| 113A4120-901 | CENTER FITTING | 42 | 113A4120-902 | CENTER FITTING | 18 |
| 113A4112-829 | END RIB | 54 | 113A4112-830 | END RIB | 43 |
| 113A4112-831 | END RIB | 33 | 113A4112-832 | END RIB | 28 |
| | #2 SPOILER CSU KIT | | | #11 SPOILER CSU KIT | |
| 113A4220-901 | CENTER FITTING | 39 | 113A4220-902 | CENTER FITTING | 32 |
| 113A4112-805 | END RIB | 19 | 113A4112-806 | END RIB | 31 |
| 113A4112-807 | END RIB | 27 | 113A4112-808 | END RIB | 39 |
| | #3 DRAG RED CSU KIT | | | #10 DRAG RED CSU KIT | |
| *113A4320-901* | HINGE FITTING | 35 | *113A4320-902* | HINGE FITTING | 32 |
| *113A4312-801* | END RIB | 49 | *113A4312-802* | END RIB | 34 |
| *113A4312-803* | END RIB | 38 | *113A4312-804* | END RIB | 40 |
| | #4 DRAG RED CSU KIT | | | #9 DRAG RED CSU KIT | |
| *113A4420-901* | HINGE FITTING | 19 | *113A4420-902* | HINGE FITTING | 30 |
| *113A4412-801* | END RIB | 33 | *113A4412-802* | END RIB | 14 |
| *113A4412-803* | END RIB | 37 | *113A4412-804* | END RIB | 30 |
| | #5 DRAG RED CSU KIT | | | #8 DRAG RED CSU KIT | |
| 113A4520-901 | CENTER FITTING | 31 | 113A4520-902 | CENTER FITTING | 25 |
| 113A4512-801 | END RIB | 23 | 113A4512-802 | END RIB | 22 |
| 113A4512-803 | END RIB | 26 | 113A4512-804 | END RIB | 32 |
| | #6 DRAG RED CSU KIT | | | #7 DRAG RED CSU KIT | |
| 113A4612-801 | END RIB | 43 | 113A4612-802 | END RIB | 38 |
| 113A4612-803 | END RIB | 47 | 113A4612-804 | END RIB | 41 |

| | | |
|---|---|---|
| 113A4611-904 | CHANNEL | 20 |
| 113A4611-903 | CHANNEL | 8 |

## Term Sheet and Purchase Agreement

This Agreement is made between Snowline Aerospace, Inc. ("Snowline") and Karen Sue Naylor, Chapter 7 Trustee ("Trustee") of the bankruptcy estate ("Estate") of Elite Aerospace Group, Inc. and related entities (collectively, "Elite"), in related bankruptcy proceedings jointly administered in the United States Bankruptcy Court, Central District of California, Case No. 8:21-bk-12231-TA. Snowline and the Trustee (collectively, the "Parties") enter into the Agreement, with reference to the following facts and circumstances:

## RECITALS

A.    These related bankruptcy cases were converted to Chapter 7 on March 11, 2022 and the Trustee was appointed on March 14, 2022.

B.    Soon after her appointment, the Trustee learned that the Debtor was occupying two locations: a facility located at 9 Studebaker, Irvine, CA (the "Studebaker Location") that had been leased for the Debtor by Chubb Insurance after a fire in the Debtor's previous main location, and where the majority of the Debtor's equipment which had been in the premises in which the fire occurred was stored, and a second location at 15773 Gateway Circle, Tustin, CA (the "Tustin Location") leased from ESF Sherman Associates, LLC ("Tustin Landlord"). Less than one week prior to the appointment of the Trustee, the Bankruptcy Court had granted immediate relief from the automatic stay to allow the Tustin Landlord to recover possession to the Tustin Location which relief included permission for the Tustin Landlord to remove assets of the estate from the Tustin Location and dispose of the same pursuant to applicable California law. Among the assets at the Tustin Location was certain raw materials consisting of aerospace-grade aluminum and titanium (the "Raw Materials"), and work in process/finished goods ("Finished Goods") The Raw Materials and the Finished Goods are collectively referred to herein as the ("Inventory"). A complete list of the Raw Materials is attached hereto as Exhibit "A". A complete list of the Finished Goods is attached hereto as Exhibit "B." The Inventory is encumbered by a first priority lien in favor of Last Chance Funding, Inc. ("LCF").

C.    As there were no liquid funds in the Estate when the Trustee was appointed, the Trustee had no ability to arrange for movers to move the Inventory from the Tustin Location to the Studebaker Location. Snowline expressed interest in purchasing the Inventory and discussed with the Trustee a proposal to move the Inventory to the Studebaker Location to avoid the Inventory being disposed of by the Tustin Landlord. The Trustee and Snowline negotiated terms for a purchase of the Inventory from the Trustee, free and clear of liens and subject to overbids from third parties. The Trustee and Snowline agreed that Snowline would bear the moving costs and the costs to itemize

1

the Inventory and those costs would be non-refundable except in the instance in which a successful overbidder became the purchaser, in which case, the minimum overbid increment would be sufficient to reimburse Snowline for the moving costs. With an agreement on these terms, Snowline moved the Raw Materials to the Studebaker Location which preserved for the Estate the value of these items and, due to concern over the availability of adequate space in the Studebaker facility, moved the Finished Goods to the location of Spearman Aerospace, 9215 Greenleaf Avenue, Santa Fe Springs, CA (the "Spearman Location").

      D.      This Term Sheet and Purchase Agreement sets forth the basic terms of agreement of the Trustee and Snowline for the purchase and sale of the Inventory.

      NOW, THEREFORE, the parties hereto do hereby agree:

      1.      Snowline or its nominee agrees to purchase the Inventory for the minimum price of $225,000.00. The purchase is subject to overbids from third parties which must be made at least three business days prior to the hearing on Bankruptcy Court approval of the proposed sale and accompanied with a deposit as set forth below. In the event of overbids from one or more third parties, Snowline shall also be permitted to submit overbids, with the last and highest overbid being deemed the successful and prevailing bid. The Trustee shall request a minimum initial overbid increment of not less than $17,000.00 and subsequent bidding increments of not less than $5,000.00

      2.      Snowline will pay an initial deposit of $22,500.00 to the Trustee within seven (7) business days of execution of this Term Sheet. The deposit will be held until confirmation of the sale and shall be refundable only in the event that (i) the sale is not approved by the Bankruptcy Court for reasons other than the withdrawal of Snowline from the sale; or (ii) Snowline is outbid by a competing bidder. The Trustee will request that all potential overbidders provide a minimum deposit of $22,500.00 to the Trustee at least three (3) days prior to the hearing on the sale, with all such deposits non-refundable on similar terms.

      3.      The obligation of Snowline to purchase the Inventory is subject to (i) entry of an Order of the Bankruptcy Court approving a sale of the Inventory to Snowline; (ii) a finding by the Bankruptcy Court that Snowline is a good faith purchaser entitled to the protections of Section 363(m); and (iii) no order staying the sale has been entered by any Court prior to the closing. Payment in full shall be due at the closing and the closing shall occur within five business days following entry of the order of the Bankruptcy Court approving the sale, unless an order has been entered staying the sale.

      4.      In the event of a successful and prevailing overbid, the Trustee shall reimburse Snowline for its costs of moving the Inventory from the Tustin Location, to its current locations in an amount not to exceed $12,000.00, provided the Bankruptcy Court authorizes the Trustee to reimburse the moving costs. The Trustee acknowledges that

2

Snowline has presented costs in excess of $12,000.00 but has agreed to limit the reimbursement of costs to $12,000.00. Payment of the moving costs shall be made following the closing of the sale to the successful bidder. If Snowline is the successful and prevailing bidder it shall not be entitled to recover its moving costs, nor shall it be entitled to deduct the moving costs as a credit to the purchase price.

     5.     Snowline will insure that the Finished Goods are accessible for inspection by other parties interested in bidding during normal business hours at the Spearman Location and will not be moved from that location prior to the closing of the Sale.

     6.     All payments shall be made by cashier's check unless otherwise agreed in advance by the Trustee.

     7.     The Parties further agree that the consideration recited in this Agreement is the sole and only consideration for this Agreement, and that no representations, promises, or inducements have been made by any of the Parties of their officers, employees, agents or attorneys thereof other than those appearing in this Agreement.

     8.     Each of the Parties has cooperated in the drafting and preparation of this Agreement. This Agreement is to be interpreted in accordance with the plain meaning of its terms and not strictly for or against any of the Parties. The terms of this Agreement are enforceable pursuant to California law.

     9.     Should any dispute arise regarding this Agreement, the United States Bankruptcy Court for the Central District of California, Santa Ana Division or any successor court shall have exclusive jurisdiction to determine the same.

     10.     Should any provision or part of a provision of this Agreement be held invalid, the invalidity does not affect other provisions of the Agreement which can be given effect without the invalid provision, and to this end the provisions of this Agreement are severable.

     11.     Each of the Parties hereto agrees to execute and deliver, or cause to be executed and delivered, all such instruments, and to take all such actions as the other Party may reasonably request which are reasonably necessary to effectuate the intent and purposes of this Agreement, all at the sole expense of the requesting Party.

     12.     The Trustee is signing this Agreement in her capacity solely as the Chapter 7 Trustee of the bankruptcy estate of Elite Aerospace Group, Inc. and related entities. Nothing contained herein shall in any way impute liability to the Trustee, personally or as a member of any professional organization or anyone acting on her behalf, including but not limited to Ringstad & Sanders, LLP.

<div align="center">3</div>

13.    This Agreement was jointly prepared through negotiations of the Parties, and the provisions of the Agreement are not to be strictly or liberally construed for or as against any of the Parties.

14.    This Agreement may be executed in counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.  Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of a manually executed counterpart of this Agreement.  Any Party delivering an executed counterpart of this Agreement by facsimile shall deliver a manually executed counterpart of this Agreement but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

THE PARTIES HERETO DO HEREBY AGREE TO ALL OF THE FOREGOING TERMS:

Snowline Aerospace, Inc.

By: Calvin Reynolds, President

Estate of Elite Aerospace Group

By: Karen Sue Naylor
        Chapter 7 Trustee

4

## Agreement for Release of Lien

This Agreement is made between Last Chance Funding, Inc. ("LCF") and Karen Sue Naylor, Chapter 7 Trustee ("Trustee") of the bankruptcy estate ("Estate") of Elite Aerospace Group, Inc. and related entities (collectively, "Elite"), in related bankruptcy proceedings jointly administered in the United States Bankruptcy Court, Central District of California, Case No. 8:21-bk-12231-TA.  LCF and the Trustee (collectively, the "Parties") enter into the Agreement, with reference to the following facts and circumstances:

### RECITALS

A.      LCF is a secured creditor of the Estate, having timely filed Proof of Claim No. 86-1 ("Secured Claim").  LCF represents that its security interest ("Security Interest") extends to personal property including raw materials and finished goods (collectively "Inventory") of Elite.

B.      LCF asserts that its Security Interest in the Inventory is secured by a first lien prior to all other liens and encumbrances in the Inventory.

C.      The Trustee has negotiated a sale of the Inventory to an interested party, Snowline Aerospace, subject to overbids.  LCF has agreed to terms of a sale with the Trustee as set forth herein.

NOW, THEREFORE, the parties hereto do hereby agree:

1.      The Trustee may seek Bankruptcy Court approval of a sale of the Inventory for the negotiated price of $225,000 to Snowline Aerospace or its nominee, ("Snowline") subject to overbids.  In the event of a successful and prevailing overbid, Snowline will be entitled to recover from the sale price its cost of moving the equipment from the Debtor's former facility located in Tustin, to its current locations, which moving costs shall not exceed $20,000.  If Snowline is the successful and prevailing bidder, it will bear the entirety of the moving costs which will not be netted from the purchase price.  The gross sale proceeds less any obligation to reimburse Snowline for moving costs is referred to herein as the "Net Sale Proceeds."

2.      LCF agrees that the Estate shall receive a carve out from LCF's lien as follows:  The first $150,000 of the Net Sale Proceeds shall be distributed to LCF.  The Estate will receive and retain 100% of the sale proceeds in excess of $150,000 up to $185,000.  Net Sale Proceeds in excess of $185,000 will be split 50% to LCF and 50% to the Estate.

3.  Upon closing of the sale in accordance with these terms, the portion of the Net Sale Proceeds due to LCF in accordance with this Agreement shall be promptly delivered

to LCF, the lien of LCF shall be released in its entirety, and the successful purchaser shall receive title free and clear of the lien of LCF.

    4.  LCF warrants and represents that it has not transferred, assigned or otherwise conveyed any interest in its Secured Claim or its Security Interest to a third party.

    5.      The Parties further agree that the consideration recited in this Agreement is the sole and only consideration for this Agreement, and that no representations, promises, or inducements have been made by any of the Parties of their officers, employees, agents or attorneys thereof other than those appearing in this Agreement.

    6.      Each of the Parties has cooperated in the drafting and preparation of this Agreement. This Agreement is to be interpreted in accordance with the plain meaning of its terms and not strictly for or against any of the Parties. The terms of this Agreement are enforceable pursuant to California law.

    7.      Should any dispute arise regarding this Agreement, the United States Bankruptcy Court for the Central District of California, Santa Ana Division or any successor court shall have exclusive jurisdiction to determine the same.

    8.      Should any provision or part of a provision of this Agreement be held invalid, the invalidity does not affect other provisions of the Agreement which can be given effect without the invalid provision, and to this end the provisions of this Agreement are severable.

    9.      Each of the Parties hereto agrees to execute and deliver, or cause to be executed and delivered, all such instruments, and to take all such actions as the other Party may reasonably request which are reasonably necessary to effectuate the intent and purposes of this Agreement, all at the sole expense of the requesting Party.

    10.     The Trustee is signing this Agreement in her capacity solely as the Chapter 7 Trustee of the bankruptcy estate of Elite Aerospace Group, Inc. and related entities. Nothing contained herein shall in any way impute liability to the Trustee, personally or as a member of any professional organization or anyone acting on her behalf, including but not limited to Ringstad & Sanders, LLP.

    11.     This Agreement was jointly prepared through negotiations of the Parties, and the provisions of the Agreement are not to be strictly or liberally construed for or as against any of the Parties.

[Continued for signatures on next page.]

2

12.      This Agreement may be executed in counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.  Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of a manually executed counterpart of this Agreement.  Any Party delivering an executed counterpart of this Agreement by facsimile shall deliver a manually executed counterpart of this Agreement but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

THE PARTIES HERETO DO HEREBY AGREE TO ALL OF THE FOREGOING TERMS:

Last Chance Funding,  Inc.

_____

By: _____

Its: _____

Estate of Elite Aerospace Group, Inc.
& related entities

_____

By: Karen Sue Naylor
       Chapter 7 Trustee

3

Exhibit "D"
Page 32

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 4910 Birch Street, Suite 120, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **MOTION OF CHAPTER 7 TRUSTEE FOR AUTHORIZATION TO: SELL PERSONAL PROPERTY CONSISTING OF RAW MATERIALS AND FINISHED GOODS FREE AND CLEAR OF LIENS SUBJECT TO OVERBIDS; DECLARATION OF CHAPTER 7 TRUSTEE KAREN SUE NAYLOR IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 4, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that he following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Bernard D Bollinger**    bbollinger@buchalter.com, IFS_filing@buchalter.com;smartin@buchalter.com
- **Kathryn M.S. Catherwood**    kcatherwood@grsm.com, mbrookman@grsm.com;sdurazo@grsm.com;jswanson@grams.com
- **Carol Chow**    carol.chow@ffslaw.com, easter.santamaria@ffslaw.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;jessica@lesliecohenlaw.com
- **Nathan E Delman**    ndelman@hmblaw.com
- **Leon Friedberg**    lfriedberg@cpmlaw.com
- **Amir Gamliel**    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Karen L Grant**    kgrant@silcom.com
- **Michael S Greger**    mgreger@allenmatkins.com, kpreston@allenmatkins.com
- **Julian I Gurule**    jgurule@buchalter.com, smartin@buchalter.com;docket@buchalter.com
- **Garrick A Hollander**    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Nicolino Iezza**    niezza@spiwakandiezza.com
- **Michael Jones**    mike@mjonesoc.com, 2651971420@filings.docketbird.com
- **Darren Krattli**    dkrattli@eisenhowerlaw.com
- **Matthew F Kye**    mkye@kyelaw.com
- **Michael B Lubic**    michael.lubic@klgates.com, jonathan.randolph@klgates.com
- **Krikor J Meshefejian**    kjm@lnbyg.com
- **Karen S Naylor (TR)**    alane@ringstadlaw.com, knaylor@IQ7technology.com;ecf.alert+Naylor@titlexi.com
- **David L. Neale**    dln@lnbyg.com
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Holly J Nolan**    holly@sglwlaw.com, missy@sglwlaw.com
- **Lorenzo Nunez**    CSBK@GMFINANCIAL.COM

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**

- **Ryan D O'Dea**    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- **Juliet Y. Oh**    jyo@lnbyg.com, jyo@lnbyb.com
- **Raymond A Policar**    policarlaw@att.net
- **Eric S Rein**    rrein@hmblaw.com
- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Lindsey L Smith**    lls@lnbyg.com, lls@ecf.inforuptcy.com
- **Richard A Solomon**    richard@sgswlaw.com
- **Richard P Steelman**    rps@lnbyg.com, john@lnbyb.com
- **Corey E Taylor**    corey@taylorlawoc.com
- **Josh B Tran**    jtran@justicelawcorp.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 4, 2022 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**THE REQUIREMENT OF LBR 5005-2(d) TO PROVIDE JUDGES COPIES TO JUDGE ALBERT IS SUSPENDED AT THIS TIME**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 4, 2022 | Becky Metzner | /s/ Becky Metzner |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**