Todd C. Ringstad (State Bar No. 97345)
todd@ringstadlaw.com
Nanette D. Sanders (State Bar No. 120169)
nanette@ringstadlaw.com
RINGSTAD & SANDERS LLP
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
Telephone: 949-851-7450
Facsimile: 949-851-6926

Attorneys for Karen Sue Naylor,
Chapter 7 Trustee

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>ELITE AEROSPACE GROUP, INC., a Delaware corporation and related substantively consolidated entities.<br><br>Debtors. | Case No. 8:21-bk-12231 SC<br><br>Chapter 7 Proceeding<br><br>**MOTION OF CHAPTER 7 TRUSTEE FOR ORDER:**<br><br>**(1) APPROVING COMPROMISE OF CONTROVERSY WITH FEDERAL INSURANCE COMPANY; AND,**<br><br>**(2) AUTHORIZING THE TRUSTEE TO PAY CONTINGENCY FEES AND COSTS TO TRUSTEE'S SPECIAL COUNSEL**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KAREN SUE NAYLOR AND SAMUEL L. BRUCHEY IN SUPPORT THEREOF**<br><br>[No Hearing Required Pursuant to Local Bankruptcy Rule 9013-1(o)] |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR AND CERTAIN OTHER INTERESTED PARTIES:**

Karen Sue Naylor, in her capacity as Chapter 7 Trustee for the estate of Elite Aerospace Group, Inc. ("EAG", "Elite" or the "Debtor") and its wholly-owned subsidiaries, Elite Aviation Products Inc., Elite Engineering Services Inc., Elite Metal Manufacturing Inc., and Zach

Halopoff Inc. (collectively, the "Subsidiaries," and together with EAG, the "Debtors"), hereby moves the Court (the "Motion") for an order approving a proposed compromise of controversy regarding a pending lawsuit brought by the Trustee against Federal Insurance Company ("Federal") and Acrisure of California, LLC doing business as Brakke-Schafnitz Insurance Brokers, LLC ("Acrisure") (the "Proposed Settlement"). The Proposed Settlement will settle only the claims against Federal. Trustee has previously reached a settlement with Acrisure, which has been approved by Order entered July 28, 2026 [Dkt. No. 600]. As detailed hereinafter, the Trustee further seeks authorization to pay from the settlement proceeds the claimed contingency fee and costs of special litigation counsel.

The Motion is made pursuant to Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Rules") and is made on the grounds that the Proposed Settlement is in the best interest of the Estate and its creditors.

This Motion is based upon the attached Memorandum of Points and Authorities, the supporting declarations of Karen Sue Naylor (the "Naylor Declaration") and Samuel L. Bruchey (the "Bruchey Declaration"), the exhibits attached to such declarations, the concurrently filed Notice of this Motion served on all creditors and interested parties entitled to notice, all pleadings, papers, and records on file with the Court in this proceeding, and on such other evidence, oral or documentary, as may be presented to and considered by the Court, in connection with this Motion and any hearing held hereon.

Dated: July 31, 2026

Respectfully Submitted,

RINGSTAD & SANDERS, LLP

By: */s/ Todd C. Ringstad*
Todd C. Ringstad
General Bankruptcy Counsel for
Karen Sue Naylor, Chapter 7 Trustee

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

# TABLE OF CONTENTS

| | | Page No. |
|---|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIE | | 3 |
| I. | STATEMENT OF FACTS | 3 |
| | A. Case Background | 3 |
| | B. The Fire and the Insurance Claim | 4 |
| | C. The State Court Litigation | 5 |
| | D. The Previous Partial Settlement With Acrisure Only | 5 |
| | E. The Partial Settlement With Federal Only | 6 |
| | F. The Terms of the Proposed Settlement with Federal | 6 |
| | G. Payment of Contingency Payment and Costs to Special Litigation Counsel | 7 |
| II. | LEGAL AUTHORITY AND ARGUMENT | 8 |
| | A. With Court Approval, a Trustee May Compromise Claims of the Estate | 8 |
| | B. The Settlement Agreement Should be Approved | 8 |
| | i. The Probability of Success in the Litigation | 12 |
| | ii. The Difficulites, if any, to be Encountered in the Matter of Collection | 12 |
| | iii. The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending to it | 12 |
| | iv. The Paramount Interest of the Creditors and a Proper Deference to Their Reasonable Views | 12 |
| | C. Payment of the Contingency Fee and Costs to Special Litigation Counsel is Appropriate | 13 |
| III. | CONCLUSION | 14 |
| DECLARATION OF KAREN SUE NAYLOR | | 15 |
| DECLARATION OF SAMUEL L. BRUCHEY | | 19 |

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

# TABLE OF AUTHORITIES

**Cases:**

*Burton v. Ulrich (In re Schmitt),*
215 B.R. 417, 421 (9th Cir.BAP 1997) 8, 9
*In re West Pointe Properties, LP,*
249 B.R. 273, 281 (Bankr.E.D.Tenn.2000) 9
*Martin v. Kane (In re A&C Properties),*
784 F.2d 1377, 1380-81 (9th Cir.1986), *cert. denied sub nom,*
Martin v. Robinson, 479 U.S. 854 (1986) 8, 9, 12, 13
*Protective Committee of Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
390 U.S. 414, 424 (1968) 9
*U.S. v. Alaska Nat'l Bank (In re Walsh Constr., Inc.),*
669 F.2d 1325, 1328 (9th Cir.1982) 8
*Woodson v. Fireman's Fund Insurance Company (In re Woodson),*
839 F.2d 610, 620 (9th Cir.1988) 8, 9

**Statutes:**

11 U.S.C. §327 13
11 U.S.C. §328 13
11 U.S.C. §328(a) 7, 13
11 U.S.C. §1102 13
11 U.S.C. §1103 13

Federal Bankruptcy Rule 2002 2, 8
Federal Bankruptcy Rule 9019 2, 7
Federal Bankruptcy Rule 9019(a) 8

Cal. Code of Civ.P. § 877.6 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

**A. Case Background.**

On September 13, 2021, Elite Aerospace Group, Inc. ("EAG" or the "Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Four of EAG's wholly-owned subsidiaries, specifically, Elite Aviation Products Inc. ("EAP"), Elite Engineering Services Inc. ("EES"), Elite Metal Manufacturing Inc. ("EMM"), and Zach Halopoff, Inc. ("ZHI," and, collectively with EAP, EES, and EMM, the "Subsidiaries") commenced their own voluntary Chapter 11 bankruptcy cases on October 5, 2021. Hereafter, the Subsidiaries and EAG shall collectively be referred to as the "Debtors." These cases are now jointly administered in accordance with the order of the Bankruptcy Court. *See* Dkt. No. 52.

On October 19, 2021, an Order Granting Motion for an Order Establishing Bar Date for Filing Proofs of Claim [Dkt. No. 8], establishing December 15, 2021 as the general claims bar date, and April 18, 2022 as the governmental entity claims bar date in the EAG case only.

On January 7, 2022, an Order Granting Motion for an Order Establishing Bar Date for Filing Proofs of Claim [Dkt. No. 211], establishing March 10, 2022 as the general claims bar in the EAP, EES, EMM and ZHI cases.

On March 11, 2022, an Order was entered converting the Debtors' jointly administered cases to Chapter 7. [Dkt No. 284]. Karen Sue Naylor is the duly appointed and acting Chapter 7 Trustee (the "Trustee") of the Debtors' bankruptcy Estates.

On May 10, 2022, the Trustee filed her Notification of Asset Case [Dkt No. 339], setting August 15, 2022 as the last day to file claims.

On September 9, 2022, the Trustee filed a Motion to Substantively Consolidate EAG and its Subsidiaries [Dkt. No. 505]. By order entered October 7, 2022 [Dkt. No. 520], the Court ordered the consolidation of the five related Debtor Entities ("Substantive Consolidation Order")

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

into the lead case of Elite Aerospace Group, Inc., Case No. 8:21-12231 TA ("consolidated Estate"), *nunc pro tunc* to October 5, 2021. Pursuant to the Substantive Consolidation Order, all assets of each of the Debtors shall be treated as being the assets of a single consolidated Estate; all claims filed against each of the Debtors' bankruptcy estates, regardless of in which case the claim was filed, shall be treated as being a claim against the consolidated Estate; all claims between and among the Debtors are hereby extinguished, so that the net effect of intercompany and/or inter-debtor debts are eliminated; and duplicate claims filed by the same creditor in the cases of more than one of the Debtors are eliminated.

**B. The Fire and the Insurance Claim.**

Approximately a year prior to the Trustee's appointment, on or about April 10, 2021, a fire broke out at the Debtors' former facility located at 1641 Reynolds, Irvine, California 92614 (the "Former Irvine Facility"), which caused significant damage to certain of the Debtors' equipment and machinery and impeded the Debtors' ability to continue business operations.

At the time of the fire, EAG held a commercial insurance policy (the "Insurance Policy"), issued by Federal Insurance Company, a subsidiary of Chubb Insurance (collectively, "Federal"), and effective from March 10, 2021 to March 10, 2022. The Insurance Policy listed three premises locations, including the Reynolds Facility, and covered direct physical loss or damage to building or personal property and business interruption losses.

When the fire occurred, the Debtors immediately contacted Federal and reported the claim. Federal paid to move the Debtors' personal property, including damaged equipment and machinery, to a new facility, but did not issue any payment to EAG on its claim under the Insurance Policy (the "Insurance Claim"). Although the Insurance Claim was submitted in or about April 2021, a response was not received before the Debtors were forced to file bankruptcy on or about September 13, 2021 and likewise was not received by the time the case was converted to Chapter 7 and the Trustee was appointed on or about March 11, 2022. As a result, immediately after her appointment, the Trustee's counsel made several demands for a response to the Insurance Claim that had been submitted.

On May 27, 2022, more than thirteen months after the fire occurred, Federal sent a letter

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

(“Denial Letter”) to the Trustee’s counsel, advising the Trustee that Federal had decided to deny the Insurance Claim. Based on the Denial Letter, it appeared that Federal denied the Insurance Claim based on allegations that material facts were misrepresented or concealed from the insurance application.

**C. <u>The State Court Litigation.</u>**

The Trustee and her general counsel reviewed the Denial Letter, the Insurance Policy, and all related documents carefully, and consulted with Shernoff Bidart Echeverria LLP (the “Shernoff Firm”), which has considerable experience in litigation against insurance companies to enforce payment of a claim under an insurance policy. The Trustee believed that the reasons for Federal’s denial of the Insurance Claim were spurious and that it was in the best interests of the Estate to pursue this Insurance Claim.

To that end, the Trustee sought to employ Shernoff Bidart Echeverria LLP (the “Shernoff Firm”) as special litigation counsel to litigate the Insurance Claim. On August 30, 2022, the Trustee filed an application to employ the Shernoff Firm and by order entered September 21, 2022 the Court approved their employment.

On November 9, 2022, the Trustee filed a Complaint for (1) Breach of the Contractual Duty to Pay a Covered Claim; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Professional Negligence in Orange County Superior Court as Case No. 30-2022-01290891-CU-IC-CXC against Federal Insurance Company and Brakke Schafnitz its insurance broker (the “State Court Litigation”).

**D. <u>The Previous Partial Settlement With Acrisure Only</u>.**

The Trustee, with the assistance the Shernoff Firm, has previously negotiated a partial settlement of the State Court Litigation which settled the claim against Acrisure only. The partial settlement will result in a substantial payment to the Estate and will result in a release of the claim as against Acrisure of California, LLC doing business as Brakke-Schafnitz Insurance Brokers, LLC and Richard Steven Brakke (collectively referred to herein as “Acrisure”). The Motion to Settle the Estate’s claims against Acrisure, only, was filed on July 9, 2026 as Dkt. No. 597 and Notice of the Motion was served upon creditors and parties in interest in the case.

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

By order entered July 29, 2026, as Dkt. No. 600, the Court approved the settlement with Acrisure, whereby Acrisure is obligated to pay the Estate the settlement sum of $600,000.00.

**E. The Partial Settlement With Federal Only.**

The Trustee, with the assistance the Shernoff Firm, has now negotiated a settlement of the remainder of the State Court Litigation, which is the claim against Federal. This partial settlement will result in a substantial payment to the Estate as described herein, and will result in a release of the claims against Federal.

**F. The Terms of the Proposed Settlement With Federal.**

A Confidential Settlement Agreement and Release (the "Agreement") has been entered into by and between (a) Federal, on the one hand, and (b) Karen Sue Naylor as the Chapter 7 Bankruptcy Trustee of Debtors ("Trustee", "Claimant" or "Plaintiff"), on the other hand. A true and correct copy of the Agreement is attached to the Declaration of Samuel L. Bruchey as Exhibit "1." The terms of the Agreement are summarized as follow[1]:

(i) Subject to the terms and conditions of the Agreement, including, but not limited to, approval of the Agreement by the Bankruptcy Court, Federal agrees to pay Claimant, and Claimant agrees to accept, the total sum of $5,000,000.00 (the "Settlement Payment"), in full and final settlement and satisfaction of all claims of the Estate against Federal, arising and asserted in the State Court Litigation.

(ii) The Settlement Payment will be paid by check payable to Karen Sue Naylor, Trustee;

(iii) The Settlement Payment will be delivered to the Trustee no later than 30 calendar days after the latest of the following to occur:

a. Trustee delivers to Federal an executed copy of the Agreement and a

[1] The following description of the terms of the proposed Settlement Agreement is intended to summarize the material terms of the Proposed Settlement for the convenience of the reader. For the full agreement, any interested party is directed to review the Settlement Agreement attached as Exhibit "1" to the Bruchey Declaration. In the event of any inconsistency between the summary and the actual terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

Ringstad & Sanders L.L.P. 23101 Lake Center Drive, Suite 355 Lake Forest, CA 92630 949.851.7450

properly executed W-9 for the payee;

b. The Orange County, California Superior Court approves the settlement embodied in the Agreement under Cal. Code of Civ.P. § 877.6; and

c. The United States Bankruptcy enters an order approving the settlement as to which the 14-day appeal period has passed without any court having entered an order staying the enforcement of the order, approving the settlement embodied in the Agreement under Fed. R. Bankr. 9019.

**G. <u>Payment of Contingency Payment and Costs to Special Litigation Counsel</u>.**

By this Motion, the Trustee further seeks authorization to pay 40% of the Settlement Payment (i.e., $2,000,000.00) to Special Litigation Counsel in accordance with the terms of engagement of the Special Litigation Counsel. The Trustee further seeks authorization to use a portion of the Settlement Payment to reimburse Special Litigation Counsel for costs and expert fees incurred in this matter, that were not previously requested in the motion to approve the Acrisure settlement, in the amount of $84,216.00. An accounting of the costs/fees incurred is attached to the Declaration of Samuel L. Bruchey as Exhibit "2."

The Court may authorize the Trustee to remit the payment approved by the Court under § 328(a). The services of Special Counsel, for nearly four years, with its team of lawyers, were essential in reaching this settlement, in finalizing the terms of the Settlement Agreement, drafting the Settlement Agreement, and ensuring compliance with the terms of the Settlement Agreement. It is important to note that the settlement was reached approximately ten (10) days before the scheduled jury trial, after extensive rounds of written discovery and numerous depositions, the provision of approximately 30,000 pages of documents and responding to a motion for summary judgment. Therefore, it is appropriate to authorize the Trustee to remit payment upon receipt of the Settlement Amount and consummation of the Proposed Settlement.

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

## II.

## LEGAL AUTHORITY AND ARGUMENT

### A. <u>With Court Approval, a Trustee May Compromise Claims of the Estate</u>.

Federal Rule of Bankruptcy Procedure 9019(a) provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Accordingly, upon appropriate notice, the Court may approve a compromise or settlement. In the instant case, the entire Notice of Motion and Motion will be or has been served on the Debtor, Debtor's bankruptcy counsel, all parties requesting special notice, and the United States Trustee. A separate Notice of the Motion, and opportunity to oppose the Motion and request a hearing thereon, will be or has been served on all creditors and other parties in interest entitled to notice.

### B. <u>The Settlement Agreement Should Be Approved</u>.

The Ninth Circuit has stated, "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A&C Properties)* 784 F.2d 1377, 1380-81 (9th Cir. 1986) *cert. denied sub nom, Martin v. Robinson* 479 U.S. 854 (1986) ("A&C Properties"). The Bankruptcy Court has great latitude in approving a compromise so long as it finds that the compromise is fair and equitable. *Id.* at 1382; *see also*, *Woodson v. Fireman's Fund Insurance Company (In re Woodson)* 839 F.2d 610, 620 (9th Cir. 1988) ("Woodson"); *Burton v. Ulrich (In re Schmitt)* 215 B.R. 417, 421 (9th Cir. BAP 1997) ("Burton v. Ulrich").

Moreover, in approving a settlement the Court is not required to conduct an exhaustive investigation into the validity of the merits of the claims sought to be compromised as a precondition to approving the Agreement. *U.S. v. Alaska Nat'l Bank (In re Walsh Constr., Inc.),* 669 F.2d 1325, 1328 (9th Cir. 1982). The Court need only find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *In re A&C Properties, supra,* 784

F.2d at 1381; *see also Protective Committee of Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (establishing "fair and equitable" standard for approval of compromises in bankruptcy).

The Ninth Circuit Court of Appeals and the Bankruptcy Appellate Panel for the Ninth Circuit have consistently held that a Bankruptcy Court must consider four factors in determining whether to approve a compromise:

(a) The probability of success in the litigation;

(b) The difficulties, if any, to be encountered in the matter of collection;

(c) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending to it; and

(d) The paramount interest of the creditors and a proper deference to their reasonable views.

*A&C Properties, supra* at 1381; *In re Woodson, supra* at 620; *Burton v. Ulrich, supra,* at 421.

When evaluating the four *A&C Properties* factors, "courts need not rule upon disputed facts and questions of law, but rather only canvass the issues…. A mini-trial on the merits is not required." *Burton v Ulrich, supra,* at 423. While the court must make an independent determination, the judgment of the trustee deserves some deference. *In re West Pointe Properties, LP* 249 B.R. 273, 281 (Bankr. E.D. Tenn. 2000).

In this case, the proposed settlement is clearly in the best interests of the Estate and consistent with the *A&C Properties* factors. The litigation arises from an insurance claim EAG submitted in April 2021 after a fire damaged manufacturing equipment at EAG's Irvine facility and forced the company to halt operations. EAG sought insurance for the cost to repair its equipment and recover from its business losses. Federal denied the claim on grounds that EAG made intentional misrepresentations to Federal about its finances, among other things, when it applied for insurance prior to the fire. EAG subsequently filed for bankruptcy and Karen Sue Naylor was appointed as the bankruptcy trustee.

In the litigation, the Trustee sued Federal for breaching the terms of the insurance policy and acting in bad faith. She also named Acrisure as an additional defendant in the lawsuit and

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

brought a negligence claim against them.

The settlement the Trustee has reached with Federal will obligate Federal to pay the Estate $5,000,000.00 in exchange for a dismissal of the Trustee's claims. This is a substantial sum of money, especially when the challenges of this case are taken into consideration. The settlement is separate from and in addition to the settlement the Trustee reached with the Acrisure Defendants, which will result in a $600,000.00 payment to the Estate.

As with any litigation, there is a substantial risk in proceeding with a trial before a jury. The Trustee believes the claims against Federal are strong. As set forth in the Declaration of Samuel L. Bruchey attached hereto, Federal denied EAG's insurance claim based on the contention that EAG made material misrepresentations about its financial condition when it applied for insurance in early 2021. Discovery revealed, however, that EAG answered every question honestly and submitted every document requested of it during the application process. Federal's own underwriter admitted under oath that she received everything she requested. Federal did virtually no underwriting. After she received an ACORD application from EAG's broker, Richard Brakke, Federal's underwriter requested three financial documents. EAG promptly submitted all three. Exactly 14 minutes later, Federal bound coverage.

After the loss, Federal scoured for unsavory information about its insured and evaluated whether it would have issued coverage had it known what the application did not reveal. It decided it would not have. But Federal's investigation never explored *why* it had not discovered this information. At deposition, Federal's Special Investigations Unit investigator admitted he had "no idea" what Federal requested of EAG and disclaimed any responsibility to investigate the underwriting process. The investigator admitted, too, that he had "no idea" whether the supposed misrepresentations and concealments were true. And he confessed he had "no idea" whether EAG's alleged misconduct was intentional. For these and other reasons, Federal had no basis to void the policy.

On the other hand, if the Trustee were to proceed to trial against Federal, the outcome could certainly be less favorable than the proposed settlement. The jury could conclude, for

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

instance, that Federal properly denied coverage for the Trustee's claim based upon Federal's allegations that EAG made alleged misrepresentations when it applied for insurance one month before the fire. EAG's insurance application, for example, asked EAG whether it had been subject to a foreclosure. EAG left the answer to this question blank. At the time Federal issued the insurance policy, however, foreclosure proceedings on EAG's manufacturing equipment had begun. Federal accused EAG of making three other material misrepresentations, which EAG and the Trustee deny or assert are immaterial. However, if the jury concluded that EAG had indeed made any of these misrepresentations and that such misrepresentations were material, Federal could have prevailed at trial.

Even if the Trustee persuaded the jury that Federal improperly denied EAG's claim, it could still recover less money than what it stands to receive now. That is because the amount of insurance benefits owed under this claim is disputed by the parties. Before denying coverage, Federal retained two equipment repair vendors who inspected EAG's fire-damaged equipment and concluded that the cost to repair it was less than $1 million.

At trial, the Trustee planned to present evidence that it was wrongfully denied benefits for its business income losses. But whether it was entitled to those benefits, and if so, in what amount, was also in dispute. Federal maintained that the Trustee could not recover business income losses because EAG was allegedly not earning a profit at the time of the fire and because it never submitted financial documentation that Federal had requested and contends were necessary to prove EAG's losses.

Plaintiff's ability to prove its damages at trial may also have been hampered by a lack of participation from key witnesses. Several executives at EAG, for example, refused to cooperate during the litigation. None of these witnesses were expected to testify at trial.

Finally, the amount of the settlement is substantial notwithstanding the court's ruling prior ruling dismissing punitive damages from the case. This ruling eliminated a significant category of damages Plaintiff had planned to pursue a trial.

For all these reasons, the Trustee believes the settlement is clearly in the best interests of the Estate.

Finally, the $5,000,000.00 settlement will enable the estate to pay in full the contingency attorney's fee of 40% and the litigation costs and expert fees that have accrued over the course of the multi-year litigation, and still obtain a substantial recovery for the Estate and its creditors.

Thus, the Estate must not pass up the opportunity to receive a substantial recovery for a breach of contract and bad faith claim against its primary defendant, Federal. This proposed settlement is well within the parameters of the A& C factors as follows:

**i. The probability of success in the litigation:**

As set forth above, while the Trustee and her counsel believe the claims against Federal are strong, there are undoubtedly risks involved in continuing to with litigate Fthe claims against Federal.

**ii. The difficulties, if any, to be encountered in the matter of collection:**

This factor does not appear to be pertinent to this matter, as the Trustee has no reason to believe that Federal would be incapable to satisfying a judgment if one is favorably obtained in this matter.

**iii. The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending to it:**

This factor is significant. The Estate would have incurred considerable delay, as well as attorney and expert fees in litigating the matter, and expenses for the Trustee and Trustee's general counsel in attending and monitoring the litigation. The trial of the issues could have consumed multiple weeks of trial time, and an appeal by the unsuccessful party could have consumed additional years and considerable additional expense.

**iv. The paramount interest of the creditors and a proper deference to their reasonable views:**

The settlement is undoubtedly highly beneficial to the Estate and its creditors. It provides an immediate and substantial return to the Estate, and more than covers the Estate's out of pocket costs incurred in litigating these claims. The benefit to the Estate of this settlement is clear and any detriment to the Estate is minimal.

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

On balance, the A&C Properties factors weigh strongly in favor of approving the partial settlement proposed in the Agreement.

**C. <u>Payment of the Contingency Fee and Costs To Special Litigation Counsel is Appropriate</u>.**

The Court approved the employment of Special Litigation Counsel on a contingency fee basis pursuant to §§ 327 and 328. Section 328 provides:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

Under the terms of employment approved by the Court, Special Counsel is entitled to payment on a contingency basis as follows:

i. 40% of any amounts recovered under the terms of the insurance policy or policies involved herein whether by compromise (settlement) or judgment;

ii. 40% of any extra-contractual damages recovered by way of compromise (settlement);

The Trustee now seeks authorization to pay Special Litigation Counsel the sum of $2,000,000, representing 40% of the $5,000,000.00 gross recovery provided the Estate pursuant to the terms of the Settlement Agreement, plus costs incurred in the amount of $84,216.00 (the amount incurred beyond those costs previously requested), from the settlement proceeds to compensate Special Counsel for its services and costs and expert fees it has incurred.

The services of Special Counsel have been essential in providing legal advice, representation, and counsel on all on matters related to the State Court Litigation, including

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

engaging in extensive discovery, preparing for and participating in mediation, negotiating and finalizing the terms of the Settlement Agreement. The payment to Special Counsel is therefore mandated by the terms of their employment, and fair and beneficial to the Estate and its creditors. The Trustee therefore requests authorization to remit the contingency attorney fees and costs to Special Counsel upon entry of the order granting this Motion and approving the proposed Settlement Agreement, and receipt of the Settlement Payment.

## III.

## CONCLUSION

Based on all of the foregoing, the Trustee submits that the Proposed Settlement is a fair and reasonable compromise of the claims of the Estate asserted in the State Court Litigation against Federal. Moreover, the Proposed Settlement is in the best interests of the Estate and its creditors and should be approved by the Court. The Trustee respectfully requests that the Court enter an order granting the Motion, approving the Proposed Settlement, and authorizing the Trustee to pay the contingency fees and costs to Special Counsel.

Dated: July 31, 2026

Respectfully Submitted,

RINGSTAD & SANDERS LLP

By: *__/s/ Todd C. Ringstad__*
Todd C. Ringstad
General Bankruptcy Counsel for
Karen Sue Naylor, Chapter 7 Trustee

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

**DECLARATION OF KAREN SUE NAYLOR**

I, Karen Sue Naylor, declare as follows:

1. I am an adult over the age of eighteen years. I am the duly appointed and acting Chapter 7 Trustee for the estate of Elite Aerospace Group, Inc. ("EAG" of the "Debtor") and its wholly-owned subsidiaries, Elite Aviation Products Inc., Elite Engineering Services Inc., Elite Metal Manufacturing Inc., and Zach Halopoff Inc. (collectively, the "Subsidiaries," and together with EAG, the "Debtors"). The matters set forth herein are personally known to me to be true, except those matters set forth on information and belief; and as to those matters, I am informed and believe them to be true. If called upon to do so, I could and would competently testify as to the truth of the matters set forth herein.

2. I make this declaration in support of my *Motion for Order: (1) Approving Compromise of Controversy Counsel* (the "Motion").

3. On September 13, 2021, EAG filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Four of EAG's wholly-owned subsidiaries, specifically, Elite Aviation Products Inc. ("EAP"), Elite Engineering Services Inc. ("EES"), Elite Metal Manufacturing Inc. ("EMM"), and Zach Halopoff, Inc. ("ZHI," and, collectively with EAP, EES, and EMM, the "Subsidiaries") commenced their own voluntary Chapter 11 bankruptcy cases on October 5, 2021. Hereafter, the Subsidiaries and EAG shall collectively be referred to as the "Debtors." These cases are now jointly administered in accordance with the order of the Bankruptcy Court. *See* Dkt No. 52.

4. On October 19, 2021, an Order Granting Motion for an Order Establishing Bar Date for Filing Proofs of Claim [Dkt. No. 8], establishing December 15, 2021 as the general claims bar date, and April 18, 2022 as the governmental entity claims bar date in the EAG case only.

5. On January 7, 2022, an Order Granting Motion for an Order Establishing Bar Date for Filing Proofs of Claim [Dkt. No. 211], establishing March 10, 2022 as the general claims bar in the EAP, EES, EMM and ZHI cases.

6. On March 11, 2022, an Order was entered converting the Debtors' jointly

administered cases to Chapter 7. [Dkt No. 284]. I am the duly appointed and acting Chapter 7 Trustee (the "Trustee") of the Debtors' bankruptcy Estates.

7. On May 10, 2022, I filed my Notification of Asset Case [Dkt No. 339], setting August 15, 2022 as the last day to file claims.

8. On September 9, 2022, I caused to be filed a Motion to Substantively Consolidate EAG and its Subsidiaries [Dkt. No. 505]. By Order entered October 7, 2022 [Dkt. No. 520], the Court ordered the consolidation of the five related Debtor Entities ("Substantive Consolidation Order") into the lead case of Elite Aerospace Group, Inc., Case No. 8:21-12231 TA ("consolidated Estate"), *nunc pro tunc* to October 5, 2021. Pursuant to the Substantive Consolidation Order, all assets of each of the Debtors shall be treated as being the assets of a single consolidated Estate; all claims filed against each of the Debtors' bankruptcy estates, regardless of in which case the claim was filed, shall be treated as being a claim against the consolidated Estate; all claims between and among the Debtors are hereby extinguished, so that the net effect of intercompany and/or inter-debtor debts are eliminated; and duplicate claims filed by the same creditor in the cases of more than one of the Debtors are eliminated.

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

**The Fire and the Insurance Claim.**

9. During the course of this case, I have learned that approximately a year prior to the my appointment, on or about April 10, 2021, a fire broke out at the Debtors' former facility located at 1641 Reynolds, Irvine, California 92614 (the "Former Irvine Facility"), which caused significant damage to certain of the Debtors' equipment and machinery and impeded the Debtors' ability to continue business operations.

10. At the time of the fire, EAG held a commercial insurance policy (the "Insurance Policy"), issued by Federal Insurance Company, a subsidiary of Chubb Insurance (collectively, "Federal"), and effective from March 10, 2021 to March 10, 2022. The Insurance Policy listed three premises locations, including the Reynolds Facility, and covered direct physical loss or damage to building or personal property and business interruption losses.

11. I am advised that when the fire occurred, the Debtors immediately contacted Federal and reported the claim. Federal paid to move the Debtors' personal property, including

damaged equipment and machinery, to a new facility, but did not issue any payment on the Debtors' claim under the Insurance Policy (the "Insurance Claim"). Although the Insurance Claim was submitted in or about April, 2021, a response was not received before the Debtors were forced to file bankruptcy on or about September 13, 2021 and likewise was not received by the time the case was converted to Chapter 7 and I was appointed on or about March 11, 2022. As a result, immediately after my appointment, my counsel made several demands for a response to the Insurance Claim that had been submitted.

12. On May 27, 2022, more than thirteen months after the fire occurred, Federal sent a letter ("Denial Letter") to my bankruptcy counsel, advising me that Federal had decided to deny the Insurance Claim. Based on the Denial Letter, it appeared that Federal denied the Insurance Claim based on allegations that material facts were omitted from the insurance application.

**The State Court Litigation.**

13. I reviewed the Denial Letter, the Insurance Policy, and all related documents carefully with my general counsel, and consulted with Shernoff Bidart Echeverria LLP (the "Shernoff Firm"), which has considerable experience in litigation against insurance companies to enforce payment of a claim under an insurance policy. I believed that the reasons for Federal's denial of the Insurance Claim were spurious and that it was in the best interests of the Estates to pursue this Insurance Claim.

14. To that end, I sought to employ the Shernoff Firm as special counsel to litigate the Insurance Claim. On August 30, 2022, I caused to be filed an application to employ the Shernoff Firm and by Order entered September 21, 2022 the Court approved their employment.

15. On November 9, 2022, I caused to be filed a Complaint for (1) Breach of the Contractual Duty to Pay a Covered Claim; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Professional Negligence in Orange County Superior Court as Case No. 30-2022-01290891-CU-IC-CXC against Federal Insurance Company, the direct parent company of Federal and Brake Schafnitz its insurance broker (the "State Court Litigation").

16. I have carefully considered the proposed Settlement that will release Federal from

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

the litigation, and discussed the matter with my Special Counsel in the matter and my general bankruptcy counsel. I believe the Settlement to be in the best interests of the Estate and its creditors. The Settlement will provide a very substantial return to the Estate and its creditors, while covering all attorneys' fees and costs that have been incurred in the litigation. The Settlement will completely resolve the pending State Court Litigation, and the Estate will incur no other costs or attorneys' fees in connection with the claim against Federal.

17. For the reasons stated herein and based on the recommendation of my Special Counsel, I believe that the Settlement with the Federal is in the best interests of the Estate and its creditors, and request that the Court approve the Settlement and the proposed payment to the Estate's Special Counsel.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st day of July, 2026, at Mission Viejo, California.

Karen Sue Naylor, Trustee

Karen Sue Naylor, Chapter 7 Trustee,
*In re Elite Aerospace Group, Inc. and related substantively consolidated entitles*

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

**DECLARATION OF SAMUEL L. BRUCHEY**

I, Samuel L. Bruchey, declare as follows:

1. I am a partner in Shernoff Bidart Echeverria LLP ("Shernoff Firm"), Special Counsel for Karen Sue Naylor, Chapter 7 Trustee (the "Trustee") in the bankruptcy proceeding of Elite Aerospace Group, Inc. and related substantively consolidated entities ("Debtors"). The following matters are true and correct and within my own personal knowledge. If called upon to do so, I could and would competently testify as to the truth of the matters set forth herein.

1. I make this declaration in support of the Trustee's *Motion for Order: (1) Approving Compromise of Controversy; and (2) Authorizing the Trustee to Pay Contingency Fees and Costs to Trustee's Special Counsel* (the "Motion").

2. Pursuant to order of the Court entered on September 21, 2022 [Dkt. No. 513], the Shernoff Firm was engaged by the Trustee to act as her special counsel in this case.

3. On November 9, 2022, my office caused to be filed a Complaint for (1) Breach of the Contractual Duty to Pay a Covered Claim; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Professional Negligence in Orange County Superior Court as Case No. 30-2022-01290891-CU-IC-CXC against Federal Insurance Company, the direct parent company of Federal ("Federal") and Brake Schafnitz its insurance broker (the "State Court Litigation") on behalf of the Trustee and bankruptcy estate.

4. My office, with its team of lawyers, has been litigating this matter for nearly four years and has conducted a substantial amount of discovery, including several rounds of written discovery and numerous depositions, participated in extensive motion practice, participated in mediation, and was preparing for trial that was scheduled for July 27, 2026. Approximately ten (10) days before the scheduled jury trial, a settlement was reached with Federal, subject to Bankruptcy Court approval.

5. By way of background, the litigation arises from an insurance claim EAG submitted in April 2021 after a fire damaged manufacturing equipment at EAG's Irvine facility and forced the company to halt operations. EAG sought insurance for the cost to repair its equipment and recover from its business losses. Federal denied the claim on grounds that EAG

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

made intentional misrepresentations to Federal about its finances, among other things, when it applied for insurance prior to the fire. EAG subsequently filed for bankruptcy and Karen Sue Naylor was appointed as the bankruptcy trustee.

6. In the litigation, the Trustee sued Federal for breaching the terms of the insurance policy and acting in bad faith. It named Brakke-Schafnitz Insurance Brokers, LLC; BRAKKE-SCHAFNITZ INSURANCE BROKERS, LLC; RICHARD STEVEN BRAKKE (collectively, “the Acrisure Defendants”) as additional defendants in the lawsuit and brought a negligence claim against them.

7. Federal denied EAG’s insurance claim based on the contention that EAG made material misrepresentations, in large part about its financial condition, when it applied for insurance in early 2021. Discovery has shown, however, that EAG made no misrepresentions. It answered every question honestly and submitted every document requested of it during the application process. Federal’s own underwriter admitted under oath that she received everything she requested. Federal did minimal underwriting. After she received an ACORD application from EAG’s broker, Richard Brakke, Federal’s underwriter requested three financial documents. EAG promptly submitted all three. Exactly 14 minutes later, Federal bound coverage.

8. After the loss, Federal scoured for unsavory information about its insured and evaluated whether it would have issued coverage had it known what the application did not reveal. It decided it would not have. But Federal’s investigation never explored *why* it had not discovered this information. At deposition, Federal’s Special Investigations Unit investigator admitted he had “no idea” what Federal requested of EAG and disclaimed any responsibility to investigate the underwriting process. The investigator admitted, too, that he had “no idea” whether the supposed misrepresentations and concealments were true. And he confessed he had “no idea” whether EAG’s alleged misconduct was intentional. For these and other reasons, it is my position that Federal had no basis to void the policy.

9. After nearly four (4) years of litigation and approximately ten (10) days before a jury trial was scheduled to commence, a settlement was reached between the Trustee and Federal in this litigation. I believe the settlement is unquestionably in the best interests of the Estate. A

Ringstad & Sanders
L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

true and correct copy of the Confidential Settlement Agreement and Release is attached hereto as Exhibit "1".

10. The settlement the Trustee has reached with Federal will obligate Federal to pay the estate $5,000,000.00 in exchange for a dismissal of the Trustee's claims. This is a substantial sum of money, especially when the challenges of this case are taken into consideration. The settlement is separate from and in addition to the settlement the Trustee reached with the Acrisure Defendants, which will result in a $600,000.00 payment to the estate.

11. While I believe the Trustee has a strong case, I am cognizant that there are always substantial risks in proceeding to trial and I advised the Trustee of the same. For example, if the Trustee were to proceed to trial against Federal, it is foreseeable that the outcome could be less favorable. The jury could conclude, for instance, that Federal properly denied coverage for EAG's claim after discovering that EAG made alleged misrepresentations when it applied for insurance one month before the fire. The jury could focus on the fact that certain questions in the insurance application were left blank by EAG. Federal accused EAG of making several material misrepresentations in the application. If the jury concluded that Plaintiff had indeed made any of these misrepresentations, Federal could have prevailed at trial.

12. Even if the Trustee persuaded the jury that Federal improperly denied its claim, it is possible that the Trustee would nonetheless recover less money than what it stands to receive now. That is because Federal is disputing the amount of insurance benefits owed under this claim. Before denying coverage, Federal retained two equipment repair vendors who allegedly inspected EAG's fire-damaged equipment and concluded that the cost to repair it was less than $1 million.

13. At trial, the Trustee planned to present evidence that it was wrongfully denied benefits for its business income losses. But whether it was entitled to those benefits, and if so, in what amount, was also in dispute. Federal maintained that the Trustee could not recover business income losses because EAG was allegedly not earning a profit at the time of the fire and because it never submitted financial documentation that Federal had requested and contended were necessary to prove EAG's losses.

14. The Trustee's ability to prove its damages at trial also would have been hampered by a lack of participation from key witnesses. Several executives at EAG, for example, refused to cooperate during the litigation. None of these witnesses were expected to testify at trial.

15. Finally, the amount of the settlement is substantial notwithstanding the court's prior ruling dismissing punitive damages from the case. This ruling eliminated a significant category of damages the Trustee had planned to pursue a trial.

16. For all these reasons, I believe the settlement is absolutely in the best interests of the Estate and recommended that the Trustee agree to the terms of the settlement.

17. On August 30, 2022, the Trustee filed an application to employ my firm, Shernoff Bidart Echeverria LLP (the "Shernoff Firm") as special litigation counsel to litigate the Insurance Claim. By order entered September 21, 2022 the Court approved our employment. Pursuant to the terms of the employment, the Shernoff Firm is to receive 40% of the gross settlement plus costs. Thus, the Shernoff Firm is entitled to 40% of the $5,000,000.00 Settlement Payment (i.e., $2,000,000.00), plus reimbursement for costs and expert fees incurred in this matter in the amount of $84,216.00. An accounting of the costs/fees incurred is attached hereto as Exhibit "2.".

18. The costs being sought in this motion do not include costs that were requested in connection with the Acrisure settlement. The Shernoff Firm advanced significant costs due to the complexity of the case and because a settlement was achieved less than two weeks before trial was scheduled to begin. Case costs included the fees of expert witnesses. The Shernoff Firm retained and designated experts to offer opinions on four key topics: the condition and value of Elite's fire-affected equipment; the economic losses suffered by Elite as a result of the fire; the underwriting of Elite's insurance policy by Federal; and, Federal's subsequent handling of Elite's insurance claim. These experts reviewed extensive claim documents, deposition transcripts and other materials to develop their opinions and prepare to testify at deposition and trial. The Shernoff Firm also advanced costs necessary to depose Federal's many percipient and expert witnesses and to participate in a private mediation. As a result, the Shernoff Firm is seeking court approval to recover these costs in addition to its court-approved attorney fees.

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 31st day of July 2026, at Beverly Hills, California.

Samuel L. Bruchey

Ringstad & Sanders L.L.P.
23101 Lake Center Drive, Suite 355
Lake Forest, CA 92630
949.851.7450

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement And Release ("Agreement") is entered into as of July __, 2026 by and between (a) Federal Insurance Company ("Federal"), on the one hand, and (b) Karen Sue Naylor as the Chapter 7 bankruptcy trustee for Elite Aerospace Group, Inc. ("EAG"), Elite Aviation Products Inc. ("EAP"), Elite Engineering Services Inc. ("EES"), Elite Metal Manufacturing Inc. ("EMM"), and Zach Halopoff, Inc. ("ZHI,") (collectively "Claimant"), on the other hand. Collectively, Federal and Claimants shall be referred to as the "Parties," and may be referred to individually as a "Party."

## RECITALS

WHEREAS, Federal was formerly an insurance underwriter and carrier for Claimant; and

WHEREAS, on September 13, 2021, EAG filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Code") as Case No. 8:21-bk-12231-SC (the "Bankruptcy Case") in the United States Bankruptcy Court, Central District of California, Santa Ana Division (the "Bankruptcy Court"). Four of EAG's wholly-owned subsidiaries, specifically, Elite Aviation Products Inc. ("EAP"), Elite Engineering Services Inc. ("EES"), Elite Metal Manufacturing Inc. ("EMM"), and Zach Halopoff, Inc. ("ZHI," and, collectively with EAP, EES, and EMM, the "Subsidiaries") commenced their own voluntary Chapter 11 bankruptcy cases on October 5, 2021. These cases were subsequently ordered jointly administered; and

WHEREAS, on March 11, 2022, the Bankruptcy Court entered an Order converting the cases to one under Chapter 7 of the Code; and

WHEREAS, on March 14, 2022, Karen Sue Naylor was appointed, and continues to serve as, trustee ("Trustee") of the bankruptcy estate (the "Estate") of Elite Aerospace Group, Inc. and its Subsidiaries, and executes this Agreement in that capacity;

WHEREAS on September 9, 2022, the Trustee filed a Motion to Substantively Consolidate EAG and its Subsidiaries [Dkt. No. 505]. By order entered October 7, 2022 [Dkt. No. 520], the Court ordered the consolidation of the five related Debtor Entities ("Substantive Consolidation Order") into the lead case of Elite Aerospace Group, Inc., Case No. 8:21-12231 TA ("consolidated Estate"), *nunc pro tunc* to October 5, 2021;

WHEREAS, a dispute (the "Dispute") has arisen between Federal and Claimant regarding coverage under a Federal Policy Number 3606-77-16NBO for Claim Number 040521012880 as alleged in the Claimant's First Amended Complaint in the lawsuit known as *Naylor v. Fed. Ins. Co.*, Orange County, California Superior Court number 30-2022-01290891 (the "Lawsuit"); and

WHEREAS, as a consequence of the Dispute, Claimant has made a claim (the "Claim") against Federal and has filed the Lawsuit against Federal; and

WHEREAS, Federal disputes the claims made against it by Claimant in the Lawsuit and otherwise; and

WHEREAS, the Parties now desire to compromise and settle fully the Claim, the Dispute, and the Lawsuit, and all matters arising out of or related to the Claim and / or the Dispute and / or the Lawsuit;

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, and for good and valuable consideration, the receipt and sufficiency of which each of the Parties acknowledges, Federal and Claimant hereby agree as follows:

**1. <u>Settlement Payment.</u>**

**A. <u>Payment.</u>**

Subject to the terms and conditions of this Agreement, including, but not limited to, approval of the Agreement by the Bankruptcy Court in the Bankruptcy Case, Federal agrees to pay Claimant, and Claimant agrees to accept, the total sum of five million dollars and no cents ($5,000,000.00) (the "Settlement Payment"), in full and final settlement and satisfaction of all claims relating to the Claim and / or the Dispute and / or the Lawsuit, including all claims raised, or which could have been raised, in any litigation of the Claim and / or Dispute and / or the Lawsuit. The Settlement Payment shall be:

(1) Paid by cashier's check payable to Karen Sue Naylor, Trustee, sent via overnight delivery to the Trustee at 23101 Lake Center Drive, Suite 355, Lake Forest, CA 92630;

(2) Sent no later than thirty (30) calendar days after the latest of the following conditions occurs:

- Claimant delivers to Federal an executed copy of this Agreement and a properly executed W-9 for the payee; and
- The Orange County, California Superior Court approves the settlement embodied in this Agreement under Cal. Code Civ. P. § 877.6; and
- The United States Bankruptcy Court enters an order approving the settlement as to which the 14-day appeal period has passed without any court having entered an order staying the enforcement of the order, approving the settlement embodied in this Agreement under Fed. R. Bankr. 9019. Claimant shall file such a motion no later than 10 days after the execution of this Agreement by the Parties, and Claimant agrees to use best efforts to obtain approval of the Bankruptcy Court within 45 days of the date of execution of this Agreement by all Parties hereto.

If one or more of the foregoing conditions is not fulfilled notwithstanding the compliance of both Parties with the terms of this Agreement, this Agreement is voidable at the option of either Party.

Upon the fulfillment of all the conditions in this section, Claimant shall, within 14 calendar days, file a dismissal with prejudice of the Lawsuit as against Federal.

**B. Attorney Fees And Costs.**

The Parties acknowledge and agree that they are solely responsible for paying their own attorney fees and costs they incurred in connection with the Claim and / or the Dispute and / or the Lawsuit, including, but not limited to, all attorney fees and costs incurred in connection with the negotiation of this Agreement. Neither Party nor its attorney(s) will seek any award of attorney fees and / or costs from the other Party, except as set forth in the Dispute Resolution section of this Agreement.

**2. Taxes.**

A. Claimant shall be solely responsible for, and is legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by Claimant to any federal, state, local, and / or regional taxing authority as a result of the Settlement Payment.

B. Claimant understands that Federal has not made, and Claimant does not rely upon, any representations regarding the tax treatment of the Settlement Payment paid pursuant to this Agreement.

C. Claimant agrees to indemnify and hold Federal harmless in the event that any governmental taxing authority asserts against Federal any claim for unpaid taxes, failure to withhold taxes, penalties, or interest based upon the payment of the Settlement Payment.

**3. Liens.**

**A. Release of Liens.**

Claimant warrants and represents that Claimant has obtained releases or will timely obtain releases of all liens related to the Claim and / or Dispute and / or the Lawsuit, and has paid, or will pay, all associated debts relating to those liens, including, but not limited to, any and all consensual, statutory, and / or judgment liens relating in any way to and / or affecting the Claim and / or the Dispute and / or the Lawsuit, including, but not limited to, purchase-money security liens; non-purchase-money security liens; mortgage liens; equity liens; hospital, ambulance, doctor, and other medical liens; worker's compensation liens; attorney's and / or other professional's liens; mechanic's liens; contractor's liens; supplier's liens; materialmen liens; tax liens; and / or judgment liens.

**B. Indemnification.**

Claimant further represents and affirms that there are no outstanding liens of any kind that would in any way affect the Claim and / or the Dispute and / or this Agreement and / or the Lawsuit, and, to the extent that any such liens exist, Claimant agrees totally and individually to be responsible for any and all liens and associated debts, and further agrees to hold harmless and indemnify Federal from any and all claims against either or both of them by any lienholder for any lien that might be asserted in connection with the Claim and / or the Dispute and / or the Lawsuit. Claimant agrees to indemnify and hold harmless Federal from any and all damages, costs (including court costs), and fees (including attorney and legal fees) that Federal incurs or suffers in connection with or as a result of Claimant's failure to obtain any release of any lien relating to or arising from the Claim and / or Dispute and / or the Lawsuit.

**4. Release of All Claims.**

Claimant, on behalf of Claimant, Elite Aerospace Group, Inc., the bankruptcy Estate of Elite Aerospace Group, Inc., and all of their predecessors, successors, direct and indirect parent companies,

direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, insurers, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby releases and forever discharges Federal, and covenants not to sue Federal, together with its predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, insurers, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, statutory claims, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorney fees and costs actually incurred), and punitive damages, of any nature whatsoever, whether at law or in equity or otherwise, or known or unknown, which Claimant has, or may have had, against Federal, whether or not apparent or yet to be discovered, or which may hereafter develop, under any federal, state, or local law, rule or regulation for any acts or omissions related to or arising from:

A. The Claim;

B. The Dispute;

C. The Lawsuit.

This Agreement resolves any claim for relief that has or could have been alleged by Claimant against Federal, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, tort, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorney fees related to or arising from the Claim and / or the Dispute and / or the Lawsuit.

Claimant certifies that Claimant has read and understood, and that Claimant's attorney(s) have advised Claimant with respect to, the provisions of California Civil Code § 1542, and / or any equivalent, similar, and / or comparable law and / or principle of law and / or equity of any jurisdiction and / or any law and / or principle of equity in any State and / or territory of the United States, any foreign state, and / or any foreign jurisdiction that would limit and / or restrict the effect or scope of the release provided in this Agreement. Claimant has consulted Claimant's own counsel regarding these matters. Claimant expressly waives any and all rights under California Civil Code § 1542 and / or under any and all equivalent, similar and / or comparable provisions, wherever found and / or enacted, which states:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**Claimant knowingly and expressly agrees and acknowledges that the released claims extend to**

**and include unknown and unsuspected claims.**

Claimant has made an investigation of the facts pertaining to this Agreement and to the released claims as Claimant deems necessary. Claimant is aware that Claimant may hereafter discover facts in addition to, contrary to, or different from those Claimant now knows or believes to be true with respect to the matters set forth herein. Nevertheless, it is the intention of Claimant fully, finally, and forever to settle and release all claims of any kind or nature whatsoever that were in existence as of the date of this Agreement. In furtherance of the Parties' intent, the release in this Agreement shall remain in full and complete effect notwithstanding the discovery and / or existence of any additional, contrary, and / or different facts.

**5. <u>Representations and Warranties.</u>**

**<u>A.</u> <u>No Outstanding Or Known Future Claims Or Causes of Action.</u>**

Each Party represents and warrants that that Party has not filed with any governmental agency or court any type of action or report against the other, and currently knows of no existing act and / or omission by the other Party that may constitute a claim or liability excluded from the released claims set out in this Agreement.

**<u>B.</u> <u>No Assignment Or Transfer of Claims.</u>**

Each Party represents and warrants that that Party is the rightful owner of and has not encumbered, assigned, and / or transferred, nor will that Party in the future attempt to encumber, assign, and / or transfer, any claim for relief or cause of action released herein.

**<u>C.</u> <u>Parties' Authority To Settle.</u>**

Each Party represents and warrants that that Party has full authority to enter into, deliver, and perform under this Agreement, and that all acts and actions have been taken to grant such authority, and that no third-party consent, which has not already been obtained, is required, other than the approval of the Bankruptcy Court in the Bankruptcy Case.

**<u>D.</u> <u>Signatories' Authority To Execute Agreement.</u>**

Each signatory to this Agreement represents and warrants that that Party is authorized to execute this Agreement on behalf of the Party for which that Party executed this Agreement.

**<u>E.</u> <u>Trustee Capacity.</u>**

The Claimant is signing this Agreement solely in her capacity as Chapter 7 Trustee of the bankruptcy estate of Elite Aerospace Group, Inc. and related entities. Nothing contained herein shall in any way impute liability to the Trustee, personally or as a member of any professional organization or anyone acting on her behalf, including but not limited to Ringstad & Sanders, LLP.

**<u>F.</u> <u>No Violation of By-laws, Covenants, or Restrictions.</u>**

Each Party warrants and represents that the Party's execution of this Agreement is not in violation of any by-law, covenants, and / or other restrictions placed upon them by their respective entities.

**6. <u>Cooperation.</u>**

Each Party agrees to take all actions and to make, deliver, sign, and file any other documents and

instruments necessary to carry out the terms, provisions, purpose, and intent of this Agreement.

**7. No Admission of Liability.**

The Parties acknowledge that this Agreement represents a compromise and final settlement of disputed claims and agree that the performance of the conditions and provisions of this Agreement, including the payment and acceptance of the Settlement Payment, is not to be construed as, and is not, an admission of any liability or wrongdoing whatsoever by any Party to this Agreement.

**8. Confidentiality.**

The terms of this confidentiality section are material to this Agreement and their violation shall constitute a breach of this Agreement, except as otherwise set forth in subsections C and D of this Section 8.

**A. Non-Disclosure Requirements.**

Each Party agrees that the terms of this Agreement and its contents (including, but not limited to, the fact of payment and the amounts to be paid hereunder) shall remain confidential and shall not be disclosed to any third-party, except:

1. To the Parties' counsel, accountants, financial advisors, professional consultants, and tax professionals retained by them.

2. To the Parties' management, officers, and Boards of Directors.

3. To any federal, state, or local governmental taxing or regulatory authority, including in connection with a tax audit and / or to comply with a tax obligation.

4. As required by law or in response to a court order or subpoena, after giving notice to the other Party as directed in the Notice section of this Agreement, in sufficient time for that Party to object to such disclosure, if possible.

5. To any mediator and / or any arbitrator in any mediation and / or arbitration regarding this Agreement.

6. To their respective insurers and / or prospective insurers, as necessary.

7. In the Bankruptcy Case in accordance with subsection C of this Section.

8. In the Lawsuit in accordance with subsection D of this Section.

Each Party agrees to provide a copy of this Agreement to any recipient identified in this paragraph to whom information concerning this Agreement is disclosed. The recipient shall be bound by this confidentiality provision and the disclosing Party shall be liable for any breaches of confidentiality by persons to whom that Party has disclosed information about this Agreement in accordance with this paragraph. Nothing contained in this paragraph shall prevent any Party from stating that the Parties have "amicably resolved all differences," or the substantial equivalent, provided, however, that in so doing, the Parties shall not disclose the fact or amount of any payments made or to be made hereunder and shall not disclose any other terms of this Agreement or the settlement described herein.

**B. Filing Under Seal; Redaction.**

Except as provided in sections C and D, below, this Agreement or any of its terms are required to be filed in court or other public forum, each Party shall, to the extent possible, file this Agreement or its terms under seal or other similar permitted means, to prevent public disclosure of this Agreement and / or any of its terms. If the filing Party is unable to file under seal, the filing Party shall redact from the filed copy the payment terms contained the Agreement, and any other sensitive, proprietary, or confidential information, to the extent permitted by law.

**C. Obtaining Bankruptcy Court Approval.**

The Trustee is required under Rules 9019 and 2002 of the Federal Rules of Bankruptcy Procedure to file a Motion with the Bankruptcy Court, upon notice to creditors, the United States Trustee, the debtor, indenture trustees, and any other entity as the Court may direct, seeking approval of this Agreement (the "Bankruptcy Motion"). Compliance with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules shall not be deemed to constitute a violation of the confidentiality provisions set forth herein.

Notwithstanding the confidentiality provisions set forth in this Paragraph C, the Bankruptcy Motion and the Notice of the Bankruptcy Motion that will be provided by the Trustee to creditors and other parties in interest requesting notice may include a description of the terms of this Agreement, may attach a copy of this Agreement, and may describe the Settlement Payment amount and payment terms set forth herein. The Motion that will be filed with the Bankruptcy Court may attach a copy of this Agreement which will remain a matter of public record in the Bankruptcy Case file. Furthermore, the Trustee and Trustee's professionals may describe the settlement terms and amount in the Trustee's Final Report and Account, any declaration and notice in support thereof, and any other accounting that the Trustee is required to file in the Bankruptcy Case, and in any applications for approval of professional fees and costs filed in the Bankruptcy Case and notice thereof.

**D. Obtaining Superior Court Approval.**

Per the terms of the Parties' settlement, Federal intends to seek approval from the Orange County, California Superior Court under Cal. Code Civ. P. § 877.6 that the Parties' settlement is in good faith. Compliance with the California Code of Civil Procedure, the California Rules of Court, and any applicable local rules shall not be deemed to constitute a violation of the confidentiality provisions set forth herein. The Cal. Code Civ. P. § 877.6 notice that will be provided to parties required or entitled to receive notice may include a description of the terms of this Agreement, may attach a copy of this Agreement, and may describe the Settlement Payment amount and payment terms set forth herein. The Cal. Code Civ. P. § 877.6 motion that will be filed with the Superior Court may, if necessary, attach a copy of this Agreement, which will remain of record in the Superior Court.

**9. Non-Disparagement.**

The Parties agree that, unless required to do so by legal process, they and their representatives will not make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, to any person whatsoever, about the other Party or any person or entity affiliated with the other Party.

**10. Agreement Is Legally Binding.**

The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective parents, subsidiaries, affiliates, predecessors, successors, and assigns / successors, assigns, executors, administrators, heirs, and estates.

**11. Entire Agreement.**

This Agreement, including the recitals, constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and / or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. Each Party acknowledges that in entering into this Agreement, that Party has not relied on any promise, representation, and / or warranty not contained in this Agreement.

**12. Modification.**

No modification of this Agreement shall be binding unless in writing and signed by each of the Parties hereto.

**13. New And / Or Different Facts: No Effect.**

Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement and / or the discovery or existence of any new or additional fact, and / or any fact different from that which either Party now knows or believes to be true.

**14. Interpretation, Severability, And Enforcement.**

**A. Interpretation.**

The headings in this Agreement are purely for convenience and are not to be used as an aid in interpreting its terms. The Parties agree that they participated equally in drafting and negotiating the terms of this Agreement and that this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

**B. Severability.**

Should any provision of this Agreement be declared or be determined by any court to be illegal, invalid, or unenforceable, the validity of the remaining parts, terms, or provisions shall not be affected thereby and the illegal, invalid, or unenforceable part, term, or provision shall be deemed not to be a part of this Agreement.

**C. Enforcement.**

Nothing in this Agreement shall be construed as, or constitute, a release of any Party's right to enforce the terms of this Agreement.

**15. Choice of Law And Forum.**

**A. Choice of Law.**

This Agreement and all related documents, including any and all exhibits attached hereto, and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of California, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of California.

**16. Dispute Resolution.**

Any dispute or claim arising out of or relating to this Agreement, or an alleged breach thereof, shall be resolved in the federal or state courts sitting in California.

The prevailing party in any such dispute resolution litigation shall be entitled to recover reasonable attorney fees and costs incurred in connection with that litigation.

**17. Notice.**

Each Party shall deliver all notices, requests, consents, claims, demands, waivers, and other communications under this Agreement (each, a "Notice") in writing, by electronic mail, and also addressed to the other Party at its address set out below (or to any other address that the receiving Party may designate from time to time in accordance with this section). Except as otherwise provided in this Agreement, a Notice is effective only (a) upon receipt by the receiving Party; and (b) if the Party giving the Notice has complied with the requirements of this Section. The Parties shall deliver any Notice at least seven (7) days before the event addressed by the Notice, unless it is impossible to do so or a longer period is required by other terms of this Agreement.

| | |
|---|---|
| If to Federal: | Federal Insurance Company<br>Chubb Group of Insurance Companies<br>202 B. Halls Mill Road<br>Whitehouse State, NJ 08889<br>Email: cscfnol@chubb.com |
| with a copy to: | Jean M. Daly<br>Walsworth LLP<br>515 S. Flower Street<br>18th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 489-4820<br>Email: jdaly@walsworthlaw.com |
| If to Claimant: | Karen Sue Naylor<br>Ringstad & Sanders, LLC<br>23101 Lake Center Drive, Suite 335<br>Lake Forest, California 92630<br>Telephone: 949.851.7450 |
| with a copy to: | Samuel L. Bruchey<br>600 South Indian Hill Boulevard<br>Claremont, California 91711<br>Telephone: 310.246.0503<br>Email: sbruchey@shernoff.com |

**18. Reliance on Own Counsel.**

In entering into this Agreement, each Party acknowledges that:

A. That Party has had the opportunity to seek and rely upon the legal advice of attorneys of that Party's own choosing.

B. That Party fully understands and voluntarily accepts the Agreement's terms based on the consideration set forth in this Agreement and not on any other promises and / or representations by the other Party and / or any attorney and / or other agent and / or representative of the other Party.

C. In deciding to sign this Agreement, that Party did not rely and has not relied on any oral and / or written representation and / or statement by the other Party and / or any attorney, and / or other agent and / or representative of the other Party, including but not limited to any representation or statement about the subject matter, basis, and / or effect of this Agreement.

**19. Counterparts And Copies.**

This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile and electronic signatures and signature pages sent by email shall be binding as though they are originals.

**20. Effective Date.**

The terms of the Agreement will be effective when a fully executed copy of this Agreement is delivered to Federal, as required in the Notice section of this Agreement (the "Effective Date").

**EACH OF THE PARTIES CERTIFIES THAT THAT PARTY HAS READ ALL OF THIS AGREEMENT AND FULLY UNDERSTANDS AND AGREES TO EACH OF THE ABOVE TERMS, CONDITIONS, AND PROVISIONS.**

**IN WITNESS WHEREOF**, and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

Dated: July 22, 2026

Karen Sue Naylor as the Chapter 7 bankruptcy trustee for Elite Aerospace Group, Inc.

Karen Sue Naylor Trustee

By: Karen Sue Naylor
Chapter 7 bankruptcy trustee for Elite Aerospace Group, Inc. and its subsidiaries

Dated: July 27, 2026

Federal Insurance Company

Thomas S. Coleman, Esq.

By:
Federal Insurance Company

**Shernoff Bidart Echeverria LLP**
**Detail Client Ledger**
**[WMS-041-11-22] ELITE AEROSPACE GROUP -V-CHUBB**
**07/02/26 - 07/30/26**

| Post Date | Vendor | Description | Ref/Ck.# | Invoice# | GIL Acct. | Advance | Inhouse | Received |
|---|---|---|---|---|---|---|---|---|
| 07/02/26 | Magna Legal Services | DEPO/C. EVERETT | | 1898298 | 15999-110 | 882.50 | | |
| 07/07/26 | Magna Legal Services | DEPO/C. EVERETT | | 1894653 | 15999-110 | 1042.90 | | |
| 07/07/26 | American Express | TRAVEL EXPENSE/SBR | 071526 | 6005 7/26 | 15999-395 | 8.00 | | |
| 07/08/26 | Bosco Legal Services Inc. | SERVICE | | 16284563 | 15999-370 | 57.25 | | |
| 07/13/26 | CASE COST COPY LOG | 142 | | | 15999-700 | | 35.50 | |
| 07/13/26 | CASE COST COPY LOG | 142 | | | 15999-700 | | 35.50 | |
| 07/13/26 | Signature Resolution | MEDIATION 7/14/26 | 155073 | PR108561 | 15999-400 | 7500.00 | | |
| 07/13/26 | Richard Faber | EXPERT FEE | 155144 | E106 | 15999-180 | 2722.50 | | |
| 07/14/26 | Veritex Los Angeles | DEPO/K. NAYLOR | | 9413148 | 15999-110 | 460.00 | | |
| 07/15/26 | Posting from AP, 07/15/26 | ACCR.INT. | | | 15999-800 | 571.18 | | |
| 07/21/26 | KA Forensic | EXPERT FEE | | 21977 | 15999-180 | 14727.50 | | |
| 07/21/26 | Veritex Los Angeles | DEPO/Z. ZIA | | 9428313 | 15999-110 | 830.00 | | |
| 07/21/26 | InfoTrack US Inc. | SERVICE | | 28797425 | 15999-370 | 19.04 | | |
| 07/21/26 | Magna Legal Services | DEPO/G. WHINNERY | | 1906425 | 15999-110 | 905.00 | | |
| 07/21/26 | Magna Legal Services | DEPO/G. WHINNERY | | 1908928 | 15999-110 | 2553.89 | | |
| 07/21/26 | Veritex Los Angeles | DEPO/L. SMITH | | 9431005 | 15999-110 | 1200.00 | | |
| 07/21/26 | Herman & Lee, LLP | EXPERT FEE | | 310 | 15999-180 | 11640.00 | | |
| 07/21/26 | Automatics & Machinery Co | EXPERT FEE | | 62986 | 15999-180 | 5400.00 | | |
| 07/21/26 | Herman & Lee, LLP | EXPERT FEE | | 309 | 15999-180 | 2360.00 | | |
| 07/22/26 | Veritex Los Angeles | DEPO/D. HERMAN | | 9430966 | 15999-110 | 1988.26 | | |
| 07/22/26 | Veritex Los Angeles | DEPO/S. BECK | | 9429360 | 15999-110 | 3182.02 | | |
| 07/24/26 | J.S. Held, LLC | EXPERT FEE | 155154 | INV-01 US-0347061 | 15999-180 | 3323.52 | | |
| 07/24/26 | J.S. Held, LLC | EXPERT FEE | 155154 | INV-01 US-0362383 | 15999-180 | 6438.56 | | |
| 07/24/26 | J.S. Held, LLC | EXPERT FEE | 155154 | INV-01 US-0326773 | 15999-180 | 13355.88 | | |
| 07/28/26 | Magna Legal Services | VIDEO CANCELLATION | | 1916704 | 15999-110 | 325.00 | | |
| 07/28/26 | Magna Legal Services | VIDEO CANCELLATION | | 1916696 | 15999-110 | 325.00 | | |
| 07/28/26 | Magna Legal Services | CANCELLATION | | 1916690 | 15999-110 | 595.00 | | |
| 07/28/26 | Magna Legal Services | APPEARANCE | | 1907950 | 15999-110 | 1137.00 | | |
| 07/28/26 | Magna Legal Services | DEPO/J. HELD | | 1908058 | 15999-110 | 595.00 | | |

| | | | | |
|---|---|---|---|---|
| | *Report Total:* | *84145.00* | *71.00* | *0.00* |

| | | |
|---|---|---|
| *Case Summary:* | *Case Settlement* | *0.00* |
| | *Liens Paid* | *0.00* |
| | *Associates Attorney Fees Paid* | *0.00* |
| | *SBEFees* | *0.00* |
| | *Costs Reimbursed* | *0.00* |
| | *Client Disbursement* | *0.00* |

**GRAND TOTAL** **$84,216.00**

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 23101 Lake Center Drive, Suite 355, Lake Forest, CA 92630.

A true and correct copy of the foregoing document entitled (*specify*): **MOTION OF CHAPTER 7 TRUSTEE FOR ORDER: (1) APPROVING COMPROMISE OF CONTROVERSY WITH FEDERAL INSURANCE COMPANY; AND, (2) AUTHORIZING THE TRUSTEE TO PAY CONTINGENCY FEES AND COSTS TO TRUSTEE'S SPECIAL COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KAREN SUE NAYLOR AND SAMUEL L. BRUCHEY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 31, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Bernard D Bollinger** bbollinger@buchalter.com, IFS_filing@buchalter.com;slee@buchalter.com;docket@buchalter.com
- **Kathryn M.S. Catherwood** kcatherwood@grsm.com, asoto@grsm.com
- **Carol Chow** Carol.Chow@saul.com, hannah.richmond@saul.com;easter.santamaria@saul.com;carol.chow@ecf.courtdrive.com;litigationdocketing@saul.com
- **Leslie A Cohen** leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;camille@lesliecohenlaw.com
- **Nathan E Delman** ndelman@ktslaw.com
- **Leon Friedberg** lfriedberg@cpmlaw.com
- **Amir Gamliel** amir.gamliel@ashurstperkins.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Karen L Grant** kgrant@silcom.com
- **Michael S Greger** mgreger@allenmatkins.com, kpreston@allenmatkins.com
- **Julian I Gurule** jgurule@omm.com, julian-gurule-5732@ecf.pacerpro.com
- **Garrick A Hollander** ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Nicolino Iezza** niezza@spiwakandiezza.com
- **Michael Jones** mike@mjonesoc.com, 2651971420@filings.docketbird.com
- **Darren Krattli** dkrattli@eisenhowerlaw.com
- **Matthew F Kye** mkye@kyelaw.com
- **Michael B Lubic** michael.lubic@klgates.com, jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com
- **Krikor J Meshefejian** kjm@lnbyg.com
- **Christopher A, Minier** cminier@go2.law, kadele@go2.law;dfitzgerald@go2.law;cmeeker@go2.law
- **Karen S Naylor (TR)** alane@ringstadlaw.com, knaylor@IQ7technology.com;ecf.alert+Naylor@titlexi.com
- **David L. Neale** dln@lnbyg.com
- **Holly J Nolan** holly@sglwlaw.com, missy@sglwlaw.com
- **Lorenzo Nunez** CSBK@GMFINANCIAL.COM
- **Ryan D O'Dea** rodea@shulmanbastian.com, lgauthier@shulmanbastian.com;avernon@shulmanbastian.com;yrivera@shulmanbastian.com
- **Juliet Y. Oh** jyo@lnbyg.com, jyo@lnbyb.com
- **Raymond A Policar** policarlaw@att.net
- **Eric S Rein** rrein@ktslaw.com

- **Todd C. Ringstad** becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Lindsey L Smith** , lls@ecf.inforuptcy.com
- **Richard A Solomon** richard@sgswlaw.com
- **Richard P Steelman** RPS@LNBYG.COM
- **Corey E Taylor** corey@taylorlawoc.com
- **Josh B Tran** jtran@justicelawcorp.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On July 31, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Counsel for Federal Insurance Company
Alan Palmer Jacobus
Alan Palmer Jacobus, Attorney-At-Law
981 Mission Street
San Francisco, CA 94103

Judge's Copy
Honorable Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth St., Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 31, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 31, 2026 | Arlene Martin | */s/ Arlene Martin* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |